In re Norman ERICKSON, Debtor.

In re Dean MORLOCK, Debtor.

TCF BANKING AND SAVINGS, Creditor/Appellant,

v.

Brian F. LEONARD, Trustee, Norman Erickson, Debtor, Appellees.

TCF BANKING AND SAVINGS, Creditor/Appellant,

v.

Brian F. LEONARD, Trustee, Dean Morlock, Debtor, Appellees.

Bankruptcy Nos. 3–86–2764, 3–86–2765. Civ. Nos. 4–87–930, 4–87–931.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 28, 1987.

Thomas J. Lallier, Mackall, Crounse & Moore, Minneapolis, Minn., for creditor/appellant.

Brian Leonard, O'Neill, Burke, O'Neill, Leonard & O'Brien, St. Paul, Minn., for debtor/appellee Leonard.

Sheridan J. Buckley, St. Paul, Minn., for debtors/appellees Morlock and Erickson.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on appeal from the bankruptcy court's order dated August 17, 1987. The Court will affirm the order of the bankruptcy court.

## FACTS

On October 15, 1986 Norman Erickson and Dean Morlock (debtors) filed voluntary chapter 7 bankruptcy petitions. Prior to filing their bankruptcy petitions, debtors liquidated several nonexempt assets and purchased fraternal benefit annuities and IRA's from Lutheran Brotherhood. At the commencement of the case Erickson's investments with the Lutheran Brotherhood were valued at $84,005 while Morlock's holdings had a value of $72,822. Upon filing their petitions, each debtor elected the exemptions available under Minnesota law. Therefore, pursuant to Minn.Stat. §§ 64B.18 and 550.37, subd. 11, the debtors' annuities were exempt assets. Each debtor's right to receive future payments under the annuities was similarly exempt to the extent reasonably necessary for the support of the debtors and their dependents.

Appellant TCF Savings (TCF) filed its proof of claims in each of the bankruptcy cases. TCF's claims, amounting to $164,898.26 arise from a state court judgment obtained against the debtors on September 26, 1986. TCF's claims against the estates are among the largest in both cases. Brian Leonard (trustee) is the trustee for the bankruptcy estates of the debtors. On December 11, 1986 the trustee filed a notice and objection to the IRA and annuity exemptions claimed by the debtors. The terms of the notice and objection provided for a February 17, 1987 hearing on the objection before the bankruptcy court. When the case came before the bankruptcy court, however, both the trustee and the debtors requested that the hearing be continued to facilitate settlement negotiations between the parties. At the time of the settlement negotiations the Minnesota Supreme Court, pursuant to a certified question from a federal bankruptcy court, was considering a state constitutional challenge to Minn.Stat. §§ 64B.18 and 550.37, subd. 11 which were the very statutes under which the debtors had claimed exemptions for their Lutheran Brotherhood IRAs and annuities.

On March 27, 1987 the Minnesota Supreme Court struck down the provisions of those sections as violative of the Minnesota State Constitution. *See In re Tveten*, 402 N.W.2d 551, 560 (Minn.1987). Several days before the *Tveten* decision was announced the debtors and the trustee in the instant case entered into an oral settlement agreement whereby the debtors would be permitted to retain eighty percent of the net value of the annuities or $125,501.60 with the bankruptcy estates receiving the remaining twenty percent. The appellees allege, and appellant does not deny, that in entering into the settlement agreement the parties were cognizant of the fact that the *Tveten* case was pending before the Minnesota Supreme Court. Nonetheless the trustee entered into the settlement reasoning that the Minnesota exemption statutes in question had been in force for eighty years and that there was therefore little chance the Minnesota Supreme Court would hold them unconstitutional.

Pursuant to bankruptcy rule 9019 the bankruptcy court was required to hold a hearing on the proposed settlement to determine if it was in the best interests of the creditors.[1] The hearing was held on Au-

---

1. Bankruptcy Rule 9019(a) provides in relevant part:

 On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) ... the court may approve a compromise or settlement.

gust 12, 1987 five months after the decision in *Tveten*. TCF did not receive any notice of the settlement agreement until after May 21, 1987 well after the date of the *Tveten* decision. Significantly, TCF concedes that at the time the settlement was entered into, *i.e.*, prior to the *Tveten* ruling, it was reasonable. *See* Transcript of Court Opinion Before the Honorable Dennis D. O'Brien at 14. However, because TCF received notice of the settlement after the *Tveten* decision it asked the bankruptcy court to invalidate the settlement on the grounds that the settlement was clearly no longer in the interests of the creditors of the estate.

At the hearing all parties conceded that the settlement was reasonable when made. Accordingly, the sole issue before the bankruptcy court was whether it should evaluate the reasonableness of the settlement at the time it was entered into or rather on the basis of developments subsequent to the agreement, *i.e.*, the *Tveten* decision. The bankruptcy court concluded that absent material mistake or other unusual circumstances, the decision of whether to approve the settlement had to be based on the facts and circumstances as they existed at the time of settlement, and not in hindsight based on later developments. Tr. at 17. The court succinctly stated its rationale for so deciding.

> Obviously, if these settlements were overturned, Trustees could be and would be in a good position to enter settlements without risk at all. I don't think that's right. I think the integrity of the process requires that a settlement entered, in good faith, which appeared to be prudent at the time, by a Trustee who is exercising his authority under the Code ought to be approved or disapproved based upon the apparent prudence of that settlement at the time it is made, and not at the time that the Court considers approval of the settlement.

Bankruptcy Rule 2002(a) provides in relevant part:

> ... [T]he clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 20 days notice by mail of

It's particularly so where it involves the same Trustee, in a case under the same Chapter. And it's especially so where there are not changed circumstances or hidden or newly discovered substantial or material facts that exist outside the context of the concerns that were dealt with in terms of reaching the settlement itself.

Transcript at 18. Accordingly, the bankruptcy court overruled TCF's objection by order dated August 17, 1987. TCF now appeals the bankruptcy court's order. Jurisdiction is proper under 28 U.S.C. §§ 1334(a) and 158.

## DISCUSSION

 It is axiomatic that the decision whether to approve a proposed settlement pursuant to Bankruptcy rule 9019 lies within the sound discretion of the bankruptcy court and will not be disturbed on appeal absent a clear abuse of discretion. *In re Patel*, 43 B.R. 500, 504–05 (N.D.Ill.1984); *In re Bell & Beckwith*, 77 B.R. 606, 611 (Bankr.N.D.Ohio 1987); *In re Lakeland Development Corp.*, 48 B.R. 85, 89 (Bankr. D.Minn.1985). In exercising its discretion the bankruptcy court is to weigh four factors bearing on the reasonableness of the settlement: (1) likelihood of success in the litigation; (2) the difficulties, if any, in the matter of the collection; (3) the complexity of the litigation and the attendant inconvenience, expense, and delay; and (4) the paramount views of the creditors and the proper deference to their reasonable views. *See, e.g., In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir.1986); *In re Flight Transportation Corp. Securities Litigation*, 730 F.2d 1128, 1135 (8th Cir. 1984), *cert. denied sub nom. Reavis & McGrath v. Antinore*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *In re Jackson Brewing Co.*, 624 F.2d 605, 607 (5th Cir.1980).

\* \* \* \* \*

(3) the hearing on approval of a compromise or settlement of a controversy, unless the court for cause shown directs that notice not be sent[.]

■ In this case the crucial issue is what time frame the bankruptcy court should have used in applying these factors. It is readily apparent that if the bankruptcy court should have weighed those factors in light of the *Tveten* decision the settlement should clearly have been rejected because the debtors would no longer have any basis for sheltering the assets in question. In contrast, if the settlement should be evaluated with reference solely to the facts as they existed prior to *Tveten* then as all the parties have acknowledged the settlement was indeed reasonable. This is an issue of law and hence the bankruptcy court's decision will be reviewed de novo. *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir.1986); *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir. 1984).

Appellant's position is premised on the view that creditors have an important role to play in the approval of compromises between a trustee and a debtor in a bankruptcy. Certainly, this position is reflected in the bankruptcy rules themselves, which mandate notice to creditors and an opportunity for a hearing. *See* Bankruptcy Rules 2002 and 9019. Because the bankruptcy rules provide for creditor input after a settlement is reached, both debtor and trustee must bear the risk that creditors will object to settlements based on subsequent facts, lest creditors be denied a meaningful right to participate in the settlement process, appellant argues. Appellant further contends that requiring courts to confine their review of settlements to facts known by the parties at the time of the agreement creates difficult problems of inquiry into the subjective states of minds of each of the parties.

Although appellant's arguments are not without merit the Court finds that in this case they are outweighed by the fundamental policy that the law favors compromise. *A & C Properties*, 784 F.2d at 1391; *In re*

*Heissinger Resources, Ltd.*, 67 B.R. 378, 383 (C.D.Ill.1986). The undisputed facts of this case are that both the trustee and the debtor viewed their agreement as binding even after the publication of the *Tveten* decision.[2] Hence, only the third-party creditors such as TCF were in a position to raise objections to the settlement based on the outcome of the *Tveten* decision. However, it is clear that TCF has objected to the settlement only because it is now clearly in its best interests to do so. No doubt TCF would not be so anxious to undo the settlement had the *Tveten* ruling gone the other way. Thus, were the Court to adopt appellant's reasoning, debtors in analogous circumstances would have little incentive to enter into binding settlements whenever a possibility existed that impending legislative or judicial development might give third-party creditors a basis upon which to claim that a previously reasonable settlement was no longer in the interests of creditors. As the bankruptcy court aptly observed, this "heads I win, tails you lose" approach would permit trustees to enter into risk free settlements. Under such a regime debtors simply would not enter into binding settlements with the trustee in derogation of a fundamental bankruptcy policy.

■ In contrast, the decision below does not leave creditors wholly without protection. In any proposed settlement the trustee has the burden of showing that the settlement terms are in the best interest of the estate. *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr.N.D.Ohio 1987); *In re GHR Cos., Inc.*, 50 B.R. 925, 931 (Bankr.D. Mass.1985). Indeed, as discussed above, the courts reviewing the settlement must inquire into whether it furthers the interests of creditors.

Because of these safeguards creditor objections to settlement agreements while given considerable weight are not controlling. *A & C Properties*, 784 F.2d at 1382;

---

**2.** At oral argument appellant's counsel suggested that neither the trustee nor the debtor were ever bound by the terms of a settlement agreement prior to approval of the bankruptcy court. Whether or not that is the case may well vary depending on the nature and terms of the agreement between the parties. Here, however, both trustee and the debtor felt bound by the terms of the oral agreement and hence neither was free to repudiate their previous position arrived at through arms-length bargaining.

*Bell & Beckwith,* 77 B.R. at 612. *See also In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 390, 399 (Bankr.E.D.Pa. 1987) (fact that participating creditors all objected to settlement did not render court powerless to approve it). In sum, these safeguards ensure that the terms of any given settlement agreement, while in hindsight perhaps not optimal from the vantage point of any given creditor, will nonetheless never fall below "the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom. Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *In re Carla Leather, Inc.,* 44 B.R. 457, 465 (Bankr.S.D.N.Y.1984), *aff'd,* 50 B.R. 764, 776 (S.D.N.Y.1985). Here the trustee adequately represented the interests of all creditors at the time he entered into the settlement. Nor has there been a showing of extraordinary circumstances or new and unforeseen substantial change which might also provide a basis for undoing the settlement. *See In re North Broadway Funding Corp.,* 34 B.R. 620, 622 (Bankr.E.D.N. Y.1984). The Court therefore concludes that the bankruptcy court did not err in approving the settlement agreement reached by the parties.

TCF relies on three cases which it argues mandate that a court review a settlement in light of all relevant facts existing at the time of review, not merely those that existed at the time the parties entered into settlement: *Newman v. Stein,* 464 F.2d 689 (2d Cir.), *cert. denied sub nom. Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972); *In re Schaak Electronics, Inc.,* Bankruptcy 3–85–1559 (Bankr.D.Minn. Dec. 5, 1986) (unreported); and *In re Lakeland Development Corp.,* 48 B.R. 85 (Bankr.D.Minn.), *aff'd mem. sub nom. Lakeland Development v. Spring Lake,* 782 F.2d 1048 (8th Cir.1985); *cert. denied sub nom. Anderson v. Spring Lake Park Partnership,* 476 U.S. 1130, 106 S.Ct. 1999, 90 L.Ed.2d 680 (1986). *Newman* involved derivative actions brought by three stockholders of a mutual fund to recover the profits resulting from the sale of a controlling block of the fund's stock to underwriters who intended to then make a public offering.

*Newman,* 464 F.2d at 690–91. The plaintiffs alleged the sale of the stock amounted to the sale of fiduciary office for personal gain and that stockholder approval had been obtained through the mailing of a materially misleading proxy statement. *Newman,* 464 F.2d at 691. After a trial on the facts surrounding the proxy statement (the facts surrounding the fiduciary claim were stipulated) the parties executed a settlement agreement for $5 million subject to court approval. The settlement was prompted in large part by the decision in *Rosenfeld v. Black,* 445 F.2d 1337 (2d Cir. 1971) which provided cogent legal authority for plaintiffs' fiduciary claim. 464 F.2d at 691. The district court subsequently approved the settlement and two dissenting stockholders appealed from the settlement as inadequate arguing that based on the *Rosenfeld* decision the anticipated recovery would have been $35 million.

The United States Court of Appeals for the Second Circuit affirmed the district court's approval of the settlement, essentially on the grounds that the continued viability of its holding in *Rosenfeld* was placed in doubt by the strong possibility that the Supreme Court would have granted certiorari to decide the liability issue, the fact that the Securities Exchange Commission had publicly disapproved of the decision and finally that private parties had initiated congressional legislation which would effectively overturn *Rosenfeld.* *Newman,* 464 F.2d at 694–96. The *Newman* court also noted some legal uncertainty existed regarding how plaintiffs' damages would ultimately have been calculated at trial. Accordingly, the *Newman* court concluded that plaintiffs were far from assured of recovering a $35 million judgment. *Newman,* 464 F.Supp. at 698.

The *Newman* plaintiffs argued that it was inappropriate to consider the likelihood of judicial or legislative reversal of the *Rosenfeld* decision because those facts were not apparent at the time the parties entered into the settlement. In rejecting this argument the *Newman* court stated:

In any event, evaluation of the propriety of a settlement requires realistic consideration of facts which affect the ultimate likelihood of success, and it would be inappropriate for a reviewing court to freeze matters as of the moment at which the parties entered into an agreement and ignore subsequent developments which either reinforce or undermine the original decision to settle.

*Newman,* 464 F.2d at 696. TCF seizes upon this language as support for its argument. While the plain language is indeed helpful to its position it is not controlling here, where the parties to the settlement are both aware about the possibility of legislative or judicial pronouncements, but proceed to reach settlement notwithstanding them.

Appellant's reliance on the unreported decision in *In re Schaak Electronics, Inc.,* BKY No. 3–85–1559, slip op. (Bankr.D.Minn. Dec. 5, 1986) is misplaced. *Schaak* involved a contingent settlement reached between a debtor and a creditor in the context of a chapter 11 reorganization. The basis of the settlement was the mutual assumption that it would enhance the debtor's chances for reorganization and ultimate viability. *Schaak,* slip op. at 3. The case was later converted to a chapter 7 reorganization at which time a hearing was held before the bankruptcy court on the approval of the original settlement. The position of the debtor, as original party to the agreement, was replaced by the chapter 7 trustee who opposed the settlement on the grounds that in the context of a chapter 7 liquidation it was no longer in the best interests of the estate. *Schaak,* slip op. at 3–4. The bankruptcy court refused to approve the settlement on the grounds that the change in circumstances eliminated the original basis for the bargain. *Schaak,* slip op. at 3–4. *Schaak* is simply inapposite. Here the trustee and the debtor both entered into the settlement with full knowledge that the *Tveten* decision was pending before the Minnesota Supreme Court. The fact that *Tveten* was ultimately decided simply is not analogous to the conversion of a chapter 11 reorganization to a chapter 7 liquidation. The third case cited by appellant, *Lakeland Development,* 48 B.R. 85 (Bankr.D.Minn.1985), is also inapposite.

Based on the foregoing, and upon review of all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that

1. appellant's appeal from the bankruptcy court order is denied;

2. the order of the bankruptcy court is affirmed.