United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 95-3848

_____

In re: Heine Feedlot Company,      *
                                   *
          Debtor,                  *
                                   *
_____  *
                                   *
Farm Credit Services, also         *
known as Production Credit         *
Association,                       *
                                   *
          Appellee,                *
                                   *
     v.                            *   Appeal from the United States
                                   *   District Court for the District
Heine Feedlot Company,             *   of South Dakota.
                                   *
          Appellant.               *

_____

Submitted:  October 24, 1996

Filed:  February 26, 1997

_____

Before MAGILL, ROSS and MURPHY, Circuit Judges.

_____

ROSS, Circuit Judge.

     Heine Feedlot Company (debtor) appeals from the district
court's[1] decision denying its Motion to Compel Interest Adjustments
on a debt owing to Farm Credit Services, also known as Production

_____

     The Honorable Lawrence L. Piersol, United States District
Judge for the District of South Dakota.

Credit Association of the Midlands (PCAM).  We affirm.

Debtor filed a voluntary petition under Chapter 11 on March 6, 1986.  The bankruptcy court entered an order confirming the Chapter 11 plan on January 27, 1988.  The terms of the order incorporated by reference a "Stipulation between [PCAM] and Debtors Regarding Secured Status and Plan Treatment," which obligated the debtor to pay PCAM's remaining claim of $788,672.45 over a 20-year period.  According to the agreement, payments included interest

> at the existing variable "A" rate of the PCAM as from time to time may exist . . . , commencing January 1, 1988, and continuing each year thereafter in like fashion until January 1, 1997, when the final balloon payment is due.  The parties agree that B-stock in the amount of $93,340.00 shall be retired by PCAM.

At the time the parties negotiated for the variable "A" interest rate, PCAM offered five rate classifications enumerated as "AAA," "AA," "A," "B" and "C."  Following confirmation of debtor's plan, PCAM discontinued the "C" classification, and eventually cancelled its alphabet pricing altogether.

On November 1, 1988, PCAM notified its borrowers that interest on all alphabetical loans would effectively increase by .75% if the borrower did not own B-stock.  Because debtor had previously retired its B-stock, this action raised debtor's interest rate from 11.2% to 11.95% and remained in effect until debtor paid off its loan.

On February 2, 1989, debtor and PCAM entered into a second stipulation to reflect that debtor's payment of $264,899.35 had reduced the outstanding principal balance to $514,579.01.  Adopting language from the original stipulation, the modified stipulation defined the applicable interest as "the variable 'A' rate of the PCAM as from time to time may exist."  The debtor then commenced making payments pursuant to the terms of the modified stipulation,

eventually acquiring other financing and paying PCAM in full on December 23, 1992.

Debtor filed a Motion to Compel Interest and Legal Fee Adjustments on January 3, 1992, arguing that the post-confirmation interest rates failed to reflect the "A" accrual rate as agreed upon by the parties, and that when PCAM discontinued its alphabet pricing, it imposed a new, arbitrary interest rate accrual.

On June 8, 1994, the bankruptcy court conducted a hearing on the debtor's motion and, over PCAM's objections, allowed debtor to introduce evidence regarding the parties' understanding of what was meant by the variable "A" rate of interest. Specifically, the debtor, through its president, Allen Heine, was asked what rate classification had been negotiated. In response, Heine testified that it was the "middle rate" of all PCAM borrowers. The bankruptcy court rejected PCAM's objection that this testimony was improper parol evidence, and accordingly entered an order granting debtor's motion to compel interest adjustments and awarding debtor $20,044.68, plus interest.

On appeal, the district court reversed the decision of the bankruptcy court and denied debtor's motion to adjust the interest. The court ruled that the bankruptcy court lacked jurisdiction to determine the reasonableness of the interest rate and that the bankruptcy court erred in permitting the debtor to testify as to the parties' intentions regarding the negotiated "A" rate of interest.

On appeal, debtor first challenges the district court's conclusion that the bankruptcy court did not have jurisdiction to consider the "reasonableness" of the "A" interest rate. Debtor argues that the January 27, 1988 order confirming the plan and discharging the debtor explicitly allowed the bankruptcy court to retain jurisdiction to determine if post-confirmation payments were reasonable and that such post-confirmation payments remained

-3-

subject to court approval.  Paragraph 4B of the order provided:

> Any such payment made before confirmation of the plan is reasonable; or if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the court as reasonable.

While we acknowledge that a bankruptcy court may explicitly retain jurisdiction in the plan itself related to its administration and interpretation, United States v. Unger, 949 F.2d 231, 234 (8th Cir. 1991), we reject debtor's argument that paragraph 4B of the order conferred upon the bankruptcy court the jurisdiction to determine the reasonableness of the "A" interest rate.  Paragraph 4B allowed the court to only determine the reasonableness of payments "fixed after confirmation of the plan." However, in the present case, the parties agreed prior to confirmation that the variable "A" interest rate would apply.  As such, the imposition of the variable "A" interest rate was fixed by agreement of the parties prior to confirmation and the bankruptcy court was without jurisdiction to determine its reasonableness.

We also reject debtor's argument on appeal that the parol evidence rule does not preclude the debtor from explaining the terms and conditions of the stipulation.  Here, the district court determined that the bankruptcy court erred when it allowed parol evidence to be introduced in the form of debtor's testimony about the negotiations culminating in the original stipulation, specifically that the "A" interest rate actually meant the "middle rate" of interest charged to all PCAM borrowers.

Under South Dakota law, "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."  S.D. Codified Laws Ann. § 53-8-5.  Further, the "written agreement supersedes all previous understandings and the intent of the parties must be ascertained therefrom, except, of

-4-

course, in cases involving fraud, mistake or ambiguity." <u>Quick v. Bakke, Kopp, Ballou & McFarlin, Inc.</u>, 380 N.W.2d 364, 366 (S.D. 1986). A writing is considered ambiguous when it is reasonably capable of being understood in more than one sense. <u>Id</u>.

Here, the language in the original stipulation is not ambiguous. The stipulation clearly stated that debtor would make payments "including interest at the existing variable 'A' rate of the PCAM as from time to time may exist (the present rate is 10.9% per annum)." The parties' written agreement expressly recognized that the "A" rate was variable and would change "from time to time." The parties did not state, as they could have, that debtor was entitled to the "middle rate of all PCAM borrowers," but only that they agreed upon the variable "A" rate. Moreover, the agreement of the parties to adopt a variable "A" rate was further acknowledged in the second, modified stipulation which repeated a pertinent portion of the language from the original stipulation, again with no mention of any "middle rate." Therefore, we agree with the district court that the stipulation language was not ambiguous and that the bankruptcy court erred in permitting the debtor to testify and present evidence of its own interpretation of the agreement. We also reject the argument that PCAM's post-confirmation cancellation of its alphabet pricing created an ambiguity in an otherwise unambiguous agreement. According to the clear and unambiguous language of the stipulation, the parties agreed to a variable rate of interest, and not to a "middle rate." The district court did not err in concluding that debtor's motion to compel interest adjustments should be denied.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

    CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.