# United States Bankruptcy Appellate Panel

## FOR THE EIGHTH CIRCUIT

---

No. 02-6012 WM

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Trism, Inc., et al., | * | |
| | * | |
| Debtors. | * | |
| | * | |
| ReGen Capital III, Inc., | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Appellant, | * | Western District of Missouri |
| | * | |
| v. | * | |
| | * | |
| Official Committee of | * | |
| Unsecured Creditors, | * | |
| | * | |
| Appellee, | * | |

---

Submitted: July 25, 2002
Filed: September 13, 2002

---

Before KRESSEL, SCHERMER and DREHER, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

ReGen Capital III, Inc. ("ReGen") appeals the bankruptcy court order approving
a stipulation between ReGen and Trism, Inc. and its affiliated debtors ("Missouri

Debtors") and sustaining the objection of the Official Committee of Unsecured Creditors ("Committee") to such stipulation. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse and remand.

ISSUE

The issue on appeal is whether the bankruptcy court erred in approving a compromise pursuant to Federal Rule of Bankruptcy Procedure 9019 while sustaining an objection to such compromise. We conclude that the bankruptcy court erred in sustaining an objection to the compromise yet approving it. We remand for approval or disapproval of the compromise after analysis of its reasonableness under the four-prong test set forth in *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135-36 (8th Cir. 1984), *cert denied sub nom. Reavis & McGrath v. Antinore*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d. 320 (1985).

BACKGROUND

On September 16, 1999, ten of the Missouri Debtors (the "Delaware Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). On November 16, 1999, AT&T filed an unsecured proof of claim in the amount of $703,689.05. ReGen is the assignee of the AT&T claim. On December 9, 1999, the Delaware Bankruptcy Court entered its order confirming the Delaware Debtors' Second Amended Plan of Reorganization which provided that non-priority unsecured claims, including the ReGen claim, were unimpaired by the Plan.

The Delaware Debtors failed to make payments on account of the ReGen claim as required by the confirmed plan. On December 13, 2000, ReGen filed a motion to compel such payments. The motion to compel and the Delaware Debtors' objection

2

thereto were settled pursuant to a stipulation and order approved by the Delaware Bankruptcy Court on March 20, 2001. Pursuant to the stipulation and order, the Delaware Debtors were required to make payments to ReGen. In the event the Delaware Debtors failed to make a required payment when due, the Delaware Debtors authorized ReGen to confess judgment against the Delaware Debtors for the unpaid amount of the debt plus interest and attorneys' fees.

The Delaware Debtors made the first payment due under the stipulation but failed to make any subsequent payments. On May 2, 2001, ReGen commenced proceedings in the Superior Court of the State of Delaware in and for New Castle County (the "Delaware State Court") for a judgment in accordance with the stipulation as a result of the Delaware Debtors' failure to make the required payments. On June 1, 2001, the Delaware State Court entered judgment (the "Judgment") in favor of ReGen and against the Delaware Debtors. Upon entry of the Judgment, ReGen registered the Judgment in those jurisdictions where assets of the Delaware Debtors were located, resulting in the creation of liens on such assets.

In addition to obtaining the Judgment, ReGen filed a motion to compel compliance with the stipulation and order ("Motion to Compel") with the Delaware Bankruptcy Court. On October 4, 2001, the Delaware Bankruptcy Court entered an order granting the motion and directing the Delaware Debtors to pay ReGen all amounts due under the stipulation and order within three business days and to pay ReGen's attorneys' fees and costs associated with the motion. The Delaware Debtors failed to make such payment.

On November 13, 2001, ReGen filed a motion to hold the Delaware Debtors in contempt (the "Contempt Motion"). While such motion was pending before the Delaware Bankruptcy Court, the Missouri Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Missouri (the "Missouri Bankruptcy Court") on December 18,

3

2001. The same day the Delaware Debtors filed a motion ("Rule 1014 Motion") with the Delaware Bankruptcy Court under Federal Rule of Bankruptcy Procedure 1014(b) seeking a determination that the bankruptcy proceedings should proceed in the Missouri Bankruptcy Court. ReGen objected to such motion. A hearing on the Contempt Motion and the Rule 1014 Motion was scheduled before the Delaware Bankruptcy Court on January 4, 2002.

Notwithstanding the motions pending in the Delaware Bankruptcy Court, the Missouri Debtors and ReGen entered into a stipulation (the "Stipulation") subject to the approval of the Missouri Bankruptcy Court pursuant to which the parties stipulated, *inter alia*, that ReGen holds an allowed claim in the amount of $434,954.59 plus interest and attorneys' fees (the "Allowed Claim"); that the Missouri Debtors acknowledge that the Allowed Claim is secured by valid liens on certain property; that upon the Stipulation becoming final and non-appealable, ReGen shall be entitled to payment of the full amount of the Allowed Claim from the proceeds of the anticipated sale of the Missouri Debtors' assets to the extent of the value of its valid liens; that the Stipulation shall be served on all creditors and parties in interest and any creditor or party in interest who fails to object to the Stipulation or whose objection is overruled shall be bound by the terms of the Stipulation; that ReGen shall withdraw its objection to the Rule 1014 Motion; that ReGen shall withdraw the Contempt Motion; that ReGen shall support the Missouri Debtors' efforts to seek approval of and consummate a sale of assets as soon as possible; and that upon the approval of the Stipulation on a final and non-appealable basis, the Missouri Debtors and their successors and assigns on the one hand and ReGen and its successors and assigns on the other hand each fully releases and discharges the other from and against any claim, right, or cause of action arising in, arising out of, or related to the Delaware bankruptcy case or the Missouri bankruptcy case that arose or accrued prior to the date of the Stipulation.

At the January 4, 2002, hearing before the Delaware Bankruptcy Court, counsel for the Debtors and for ReGen announced the terms of the Stipulation on the record. Counsel for the Committee participated in that hearing by telephone.

On January 7, 2002, the Missouri Debtors filed a motion with the Missouri Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Rule 9019 Motion") seeking approval of the Stipulation. A hearing on the Rule 9019 Motion was set for January 30, 2002. The Missouri Debtors also filed a motion to sell substantially all of their assets (the "Sale Motion") which was set for hearing on January 30, 2002.

On January 28, 2002, the Committee filed an objection to the Rule 9019 Motion wherein the Committee attempted to reserve its right to object to ReGen's claim for interest and attorneys' fees and to object to the validity of ReGen's liens.

On January 30, 2002, the Missouri Bankruptcy Court held a hearing on the Rule 9019 Motion and on the Sale Motion. The Missouri Bankruptcy Court orally approved the Stipulation and sustained the Committee's objection to the Rule 9019 Motion. The Missouri Bankruptcy Court approved the Sale Motion later that same day. The Missouri Bankruptcy Court subsequently entered an order approving the Stipulation and sustaining the Committee's objection to the extent the Stipulation attempts to bind the Committee. The order expressly provides that "neither the [Rule 9019 Motion] nor the Stipulation are binding on the Committee. Nothing in this Order shall restrict the Committee's ability to object to the allowance, extent and priority of ReGen's alleged judgment liens (the 'Liens'), including the avoidability of the Liens, on certain of Debtors' real property." ReGen appeals this order.

STANDARD OF REVIEW

A decision to approve or disapprove a proposed settlement under Bankruptcy Rule 9019 is within the discretion of the bankruptcy judge. *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135-36 (8th Cir. 1984), *cert denied sub nom. Reavis & McGrath v. Antinore*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d. 320 (1985); *TCF Banking & Sav. v. Leonard (In re Erickson)*, 82 B.R. 97, 99 (D. Minn. 1987). Consequently, we review the Missouri Bankruptcy Court's order for an abuse of discretion. *Erickson*, 82 B.R. at 99. An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.*, 296 U.S. 384, 405, 110 S. Ct. 2447, 2461, 110 L.Ed. 2d 359 (1990).

DISCUSSION

In exercising its discretion to approve a proposed settlement under Bankruptcy Rule 9019, a court must weigh four factors bearing on the reasonableness of the settlement: (1) the likelihood of success in the litigation; (2) the difficulties, if any, in collection matters; (3) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and a proper deference to their reasonable views. *Flight Transp.*, 730 F.2d at 1135; *Erickson*, 82 B.R. at 99. Once the bankruptcy court has determined and weighed such factors, it must either approve or refuse to approve the proposed settlement. An abuse of discretion occurs when the court does not determine and weigh these factors and either approve or reject the proposed settlement.

A review of the transcript and order indicates that the Missouri Bankruptcy Court failed to address the four factors. Instead, the hearing focused on an interpretation of the Stipulation wherein the court determined that the Committee was not bound by language which purported to bless the secured claim asserted by ReGen

and insulate ReGen from potential preference exposure. Such a determination may in fact be necessary if the Stipulation is approved and its interpretation is disputed in the future.[1] However, the court's role in evaluating a motion to approve a settlement is limited to determining whether the proposed settlement is reasonable under the circumstances after a review of the relevant factors.[2]

When considering contested motions, the court must determine the facts relevant to the legal inquiry, consider the motion and any objections, and must rule on the objections, either sustaining them, in which case the motion must be denied, or overruling the objections, in which case the motion can be granted. A court cannot sustain an objection and simultaneously grant a motion to approve a settlement. In so doing, the court changes the essential terms of the proposed settlement and violates the purpose and spirit of Federal Rule of Bankruptcy Procedure 9019 or decides issues not necessary to the approval or disapproval of the settlement.

Pursuant to Federal Rule of Bankruptcy Procedure 9019, the court may approve a settlement on motion by the trustee or debtor-in-possession after notice and a hearing. Notice must be given to creditors, the United States Trustee, the debtor,

---

[1]Whether the Committee may use an avoiding power under Chapter 5 of the Bankruptcy Code with respect to the allowed claim of ReGen was not before the Court at the hearing to approve the Stipulation and is a question for another day.

[2]According to the dissent, the Missouri Bankruptcy Court was not faced with the task of approving or rejecting the Stipulation under Federal Rule of Bankruptcy Procedure 9019(a) because no one disputed its reasonableness under the four-prong test set forth in *Flight Transport*. In the dissent's view, the order merely interpreted the language of the Stipulation and found that the Committee was not bound by its terms. We disagree. We view the order as both approving the Stipulation and separately ordering that it not bind the Committee. The language from the transcript cited and emphasized by the dissent on page 14 supports our conclusion. We believe the order was inappropriate to the extent it went beyond the task at hand – the approval or disapproval of the Stipulation.

indenture trustees, and any other party as the court may direct. Fed. R. Bankr. P. 9019(a). When considering a proposed settlement, deference must be given to the reasoned opinions of creditors. *Flight Transp.*, 730 F.2d at 1135; *Erickson*, 82 B.R. at 99. One of the reasons that notice and court approval are required is to prevent a debtor from binding the estate to the terms of a compromise without court approval after input from creditors and parties in interest.

By entering into the Stipulation for the allowance of its claim, ReGen undoubtedly believed that such Stipulation would be binding on creditors in the same manner as a court order allowing a claim. Consequently, notice to creditors was necessary before the Stipulation could have such an effect. This Stipulation may be meaningless to ReGen if the creditors are not bound by its terms and can essentially step into the Missouri Debtors' shoes to challenge the very concessions made by the Missouri Debtors to induce ReGen to settle.[3]

Compromise is a normal part of the reorganization process. *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988). Compromise is favored by the law. *Erickson*, 82 B.R. at 100; *Apex*, 92 B.R. at 867. A major purpose of compromise is to avoid the expense, burdens, and uncertainty associated with litigation. *Apex*, 92 B.R. at 866. If creditors are not bound by the Stipulation, the estate may still incur the expense of the Committee pursuing litigation with ReGen, the Missouri Debtors may still be burdened with discovery and other time-consuming tasks associated with

---

[3]What debtor would not promise an adversary the sun and the moon and the stars (or at least the allowance of its claim) in the form of a settlement in order to obtain a strategic advantage if it knew that its creditors would not be bound and that they can, and undoubtedly will, pursue the very remedy being abandoned by the debtor? Of course, any proposed settlement must still be reasonable to obtain court approval; yet how unreasonable for the estate as a whole is a settlement which provides the debtor with an advantage while allowing the estate, through the creditors, to avoid the price promised by the debtor to obtain the advantage? Adversaries have no incentive to compromise under such a scenario.

litigation which detract from the Missouri Debtors' ability to focus on reorganizing their businesses, and the outcome of the dispute is uncertain. In this instance, certain benefits to the estate of settlement may be lost if creditors are not bound. That issue is for another day, however. The Stipulation must be approved or disapproved as presented, and the Missouri Bankruptcy Court must evaluate all factors, including whether the settlement eliminates costs of litigation, in making its determination.

A court's role in evaluating a proposed settlement under Rule 9019 is to determine if the settlement is in the best interest of the estate. The Missouri Bankruptcy Court must accept or reject the settlement as presented. It cannot bind ReGen to the obligations of its bargain by approving the Stipulation while eviscerating the benefits negotiated by ReGen by sustaining an objection thereto.

The Committee argues that this appeal is moot because ReGen has already performed its end of the bargain – it withdrew the Contempt Motion, withdrew its objection to the Rule 1014 Motion which was thereafter granted by the Delaware Bankruptcy Court, and it supported the Missouri Debtors' Sale Motion which was approved by the Missouri Bankruptcy Court. We disagree. ReGen seeks an order overruling the Committee's objection and granting the Rule 9019 Motion. We are remanding this matter for a ruling either sustaining the Committee's objection and denying the Rule 9019 Motion or overruling the objection and granting the Rule 9019 Motion. The very relief sought by ReGen is possible. Therefore, the appeal is not moot. Nonetheless, the Committee is free to argue on remand that the Rule 9019 Motion is moot.

The Committee also argues that the Stipulation was entered into by the Missouri Debtors in their capacity as "debtors" and not as "debtors-in-possession" notwithstanding the fact that the Stipulation was signed by "Attorneys for Debtors and Debtors in Possession." We reject this argument. Where no trustee has been appointed in a Chapter 11 case, the debtor acts as a debtor-in-possession when

exercising the rights and powers and performing the duties which would otherwise fall within the province of a trustee. 11 U.S.C. § 1107(a).[4] The debtor-in-possession's powers and duties include the obligation to review and object to claims and to prosecute avoidance actions if a purpose would be served thereby. The Missouri Debtors' authority to enter into the Stipulation was derived from their capacity as debtors-in-possession.

## CONCLUSION

The Missouri Bankruptcy Court erred in approving the settlement under Federal Rule of Bankruptcy Procedure 9019 while sustaining the Committee's objection thereto. The Court must evaluate the reasonableness of the proposed settlement, taking into consideration the reasonable views of the creditors, and either approve or disapprove the presented settlement. Accordingly we remand this matter to the Missouri Bankruptcy Court to apply the four-prong test and either overrule the objection and approve the Stipulation or sustain the objection and deny the motion seeking approval.

DREHER, Bankruptcy Judge, Dissenting.

I respectfully disagree and would affirm. The record establishes that the bankruptcy court enforced, precisely, the agreement ReGen reached with the Missouri Debtors. To me, it is plain that ReGen knew from the start that its agreement with the Missouri Debtors did not, and was not intended to, foreclose the Committee, a

---

[4]Indeed, the Supreme Court has stated that "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984).

nonparty to the Stipulation, from asserting whatever claims it might have, or claim to have, against ReGen.

This is not an appeal that turns on whether the bankruptcy court properly applied the Flight Transportation factors in deciding to approve the Stipulation. Neither the Committee nor any other party objected to the Stipulation between ReGen and the Missouri Debtors on that ground. Rather, the Committee objected to being bound by the terms of a Stipulation to which it had not agreed and which it had a duty, under the Bankruptcy Code, to investigate and challenge if appropriate. *See* 11 U.S.C. § 1103(c)(2). The Committee and the Missouri Debtors are distinct entities. Each possesses an independent right to raise any issue in the case. *See* 11 U.S.C. § 1109(b). To the extent these rights or duties were affected by the Stipulation, it was the Committee's intent, as expressed by its limited objection, to preserve its rights and carry on its duties.

The bankruptcy court did not specifically address the Flight Transportation factors as they relate to the objections of the Committee. There was no need to do so, and there is certainly no need to remand to require it to do so, because ReGen, the Committee, the Missouri Debtors and the bankruptcy court all agreed that the agreement between ReGen and the Missouri Debtors was within the realm of reasonable compromise under Rule 9019. *See* Continental Airlines, Inc. v. Air Line Pilots Ass'n (In re Continental Airlines, Corp.), 907 F.2d 1500, 1508 (5th Cir. 1990); Pineo v. Turner (In re Turner), 274 B.R. 675, 681 (Bankr. W.D. Pa. 2002).

The issue before the bankruptcy court was how to properly interpret the Stipulation in light of ReGen's apparent after-the-fact recognition that the deal it had made with the Missouri Debtors did not conclude the matter. The issue we should be focusing on in this appeal is whether the bankruptcy court accurately read the Stipulation. The bankruptcy court interpreted the Stipulation to be unambiguous and to not bind any party that objected and whose objection was not overruled. We review

11

*de novo* the bankruptcy court's determination that the Stipulation was unambiguous. *See* John Morrell & Co. v. Local Union 304A, United Food & Commercial Workers, 913 F.2d 544, 550 (8th Cir. 1990); Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954, 959-60 (8th Cir. 2000). If the bankruptcy court's review of the Stipulation did not go beyond the "four corners" of the unambiguous, written Stipulation, we also review its interpretation of that Stipulation *de novo*. Stevenson v. Stevenson Assocs. (In re Stevenson Assocs., Inc.), 777 F.2d 415, 418 (8th Cir. 1985). Only if we agree with the bankruptcy court's interpretation of the terms of the Stipulation do we set aside the bankruptcy court's approval of the Stipulation if there was plain error or abuse of discretion. *See* New Concept Hous., Inc. v. Arl W. Poindexter (In re New Concept Hous., Inc.), 951 F.2d 932, 939 (8th Cir. 1991).

The Stipulation was reached by ReGen and the Missouri Debtors on the eve of the January 4 hearing in the Delaware bankruptcy court. At the commencement of that hearing, counsel for the Missouri Debtors and ReGen advised the Delaware bankruptcy court that they had reached an agreement. In return for the Missouri Debtors' agreement that ReGen be allowed a secured claim in the Missouri bankruptcy case of $434,954.59 and to payment out of the proceeds of a pending sale of the Missouri Debtors' assets, ReGen would withdraw its motion for contempt and agree to the Missouri Debtors' motion to proceed in the Missouri bankruptcy court. In explaining the agreement to the court, ReGen's counsel repeatedly referred to it being one between the Missouri Debtors and ReGen only. Counsel for the Committee made clear that, while the Committee had no objection to the case proceeding in Missouri, the Committee was not a party to the Stipulation and wished to preserve its rights to object in the Missouri court proceedings: "*. . . the Committee has no objection to the stipulation as long as it's clear . . . that the Committee will have a full opportunity to review and comment on the Stipulation in this Missouri case.*"(emphasis added)

The language of the Stipulation which recorded this understanding and which came on for approval in the Missouri bankruptcy court on January 30 preserved these

two features: first that the agreement was one between the Missouri Debtors and ReGen only; and second, that nonparties were bound only if they did not object or their objections were overruled. Throughout, the Stipulation recites that the agreement is one between ReGen and the Missouri Debtors only. Most importantly, Paragraph 5 of the Stipulation specifically provides: "This Stipulation and Order shall be served upon all creditors and parties in interest in the Missouri cases and any creditor or party in interest who fails to object or whose objection is overruled by the Court shall be bound by the terms of this Stipulation and Order." Further, in paragraph 9, the Missouri Debtors "and their successors and assigns" gave a general release to ReGen, but that release was qualified as being subject to and "excluding the rights and obligations arising out of the Stipulation," thus specifically excluding from its scope any release by nonparties to the Stipulation.

When the Stipulation was noticed for settlement, the Committee objected on a limited basis. Noting that it had not been a party to the Stipulation, the Committee agreed that ReGen had an unsecured claim in the agreed-upon amount, but "preserved its right" to object to any award of interest and attorneys' fees and to challenge the validity of ReGen's claim.

At the hearing on the approval of the settlement, Debtors' counsel acknowledged that ReGen's judgment lien might be subject to avoidance but urged that the Debtors had satisfied themselves that it was in their best interests, given the cost of litigation, to make the settlement. Placing Debtors' understanding of the Stipulation squarely on the record, counsel acknowledged, however, that "debtor can only bind itself and stipulate from its perspective," that the agreement said "nothing about preference exposure," and that "we always took the position that we would have to notice this out to all parties." He made clear that the Debtors had complied, in his view, with Debtors' obligations under this agreement. Committee counsel then urged that, while the Committee felt that agreement was clear on its face, it would like language to the effect that the Committee's rights to proceed with claims against ReGen were unaffected. The

13

court, over the objection of ReGen's counsel who proclaimed surprise that the Committee was taking this stance,[5] agreed;

> "Well, I think that's--those are issues that I would have in a preference action if you chose to bring one. Let me look at your objection. Well, I could approve the Stipulation and order with the caveat that, *as set out in Paragraph 5 that the Stipulation and order is not binding on the committee insofar as it purports to restrict the committee's ability to contest the intent of --the validity, extent and priority of the liens that are claimed by ReGen. And that, in my view, comports with Paragraph 5, does not violate Paragraph 5 in the Stipulation because it instructs it is only binding on those parties who fail to object.* The Committee has objected and I will sustain the Committee's objection to the extent the stipulation purports to bind them or--purports to--in the event it does not purport to restrict with that caveat." (emphasis added)

The Order from which this appeal is taken conformed to these recorded comments. The court approved the Stipulation, ordering that "Neither the Amended Motion nor the Stipulation are binding on the Committee. Nothing in the Order shall restrict the committee's ability to object to the allowance, extent or priority of ReGen's alleged judgment liens ("The Liens"), including the avoidability of the Liens, as to certain of the Debtor's real property." To provide the comfort that the Committee sought, it further "sustained the objection 'to the extent the Stipulation attempts to bind the Committee.'"

The bankruptcy court correctly interpreted the Stipulation and it certainly did not err by providing more than it needed to in the way of the comfort language. As is clear from the detailed review of the record, the court's true analysis is that such language was totally unnecessary.

---

[5]In light of the record made in Delaware, this position is difficult to understand.

ReGen argued, and the majority agreed, that by determining it could both approve the Stipulation and sustain the objection, the bankruptcy court modified the terms of the agreement. To the contrary. The bankruptcy court interpreted the unambiguous Stipulation to allow it to do both. State contract law governs the interpretation of agreements in bankruptcy. Stevenson Assocs., 777 F.2d at 419; In re Frye, 216 B.R. 166, 170 (Bankr. E.D. Va. 1997). The intention of the parties to an unambiguous contract must be determined from the contract alone.[6] Morgan v. City of Rolla, 947 S.W.2d 837, 841 (Mo. Ct. App. 1997). "Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else." Cabell v. Markham, 148 F.2d 737 (2nd Cir. 1945)(Hand, J.), *aff'd,* 326 U.S. 404 (1945). The bankruptcy court interpreted paragraph 5 according to its express language and the plain meaning of the words. *See* Sonoma Management Co. v. Boessen, 70 S.W.3d 475, 477 (Mo. Ct. App. 2002)(holding that words should be given their natural and ordinary meaning). The terms of paragraph 5 are unambiguous and mean exactly what they say. The Stipulation bound any party that did not object or whose objection was overruled. The Committee objected, its objection was not overruled, and by its plain meaning the Stipulation did not bind the Committee. *See* Farm Credit Servs. v. Heine Feedlot Co. (In re Heine Feedlot Co.), 107 F.3d 622, 624-25 (8th Cir. 1997) (holding that, where the language of a stipulated order is clear and unambiguous, the plain language of the stipulation controls and the contract should be enforced according to its terms).

---

[6]If the contract was deemed ambiguous, ReGen would still not prevail as the ambiguity was of its own making. ReGen drafted the Stipulation and "[i]t is a longstanding principle of contract law that, absent parol evidence as to the meaning of an ambiguous term, ambiguous terms of a contract are construed against the drafter of the contract." Hennessy v. Daniels Law Office, 270 F.3d 551, 553-54 (8th Cir. 2001)(*citing* Webb v. James, 147 F.3d 617, 623 (7th Cir. 1998)).

In its appellate brief and at argument, counsel for ReGen urged that it simply never occurred to ReGen that it needed to draft for the circumstances where an objection was sustained, but the Stipulation still approved. Despite this lack of foresight, "a court is not free to save parties from what it believes are contractual mistakes or oversights." Towers Hotel Corp. v. Rimmel, 871 F.2d 766, 773 (8th Cir. 1989). The record makes clear that Debtors' counsel had no such misunderstanding of the Stipulation. Debtor's could "only bind itself and stipulate from its perspective." The Debtors knew the Stipulation did not bind the Committee, but apparently ReGen did not. In essence, ReGen's argument boils down to one of unilateral mistake. Absent fraud of some other exceptional circumstance, courts are not free to relieve parties of a unilateral mistake of fact. See Gaines v. Jones, 486 F.2d 39, 43 (8th Cir. 1973), cert. denied, 415 U.S. 919 (1974) (applying Missouri law). If the agreement of the Committee was necessary to provide ReGen the benefits of its agreement, it should have negotiated with the Committee and made it a party to the Stipulation. Since the Stipulation was unambiguous, the bankruptcy court's interpretation of the Stipulation is subject to *de novo* review, and upon review I interpret the Stipulation exactly as interpreted by the bankruptcy court. See Porous Media Corp., 220 F.3d at 959.

In the alternative, ReGen argues that the Committee was bound to the agreement prior to its approval by the bankruptcy court. The Committee's comments at that hearing and Debtor's counsel's comments at the hearing before the bankruptcy court, however, make clear that its consent in Delaware was subject to its review of the agreement prior to bankruptcy court approval in Missouri. The Committee was a non-party not bound by the Stipulation unless it failed to object. See Byrd v. Sprint Communications Co., 931 S.W.2d 810, 814 (Mo. Ct. App. 1996)(rejecting contention that non-party can be bound by agreement). The Missouri Debtors and ReGen simply had no power to contract away the Committee's role in this case. See 11 U.S.C.§1103(c)(2),(5); In re Eastern Maine Elec. Coop., 121 B.R. 917, 932 (Bankr. D. Me. 1990)(discussing committee's role in the "initiation of various proceedings").

Where I believe the majority especially errs is in its conclusion that the bankruptcy court's order expands the rights of the Committee and alters the terms of the Stipulation. I do not believe this was the intent of the bankruptcy court or a correct interpretation of its order. The order simply states that "[n]othing in this Order shall restrict the Committee's ability to object to the allowance, extent and priority of ReGen's alleged judgment liens (the 'Liens'), including the avoidability of the Liens, on certain of Debtors' real property." I again interpret this to mean exactly what it says: the order shall not "restrict" the rights of the Committee. If the Committee has the right or the duty to object to the allowance, extent and priority of liens, those rights and obligations are not restricted by the order. I do not interpret the order to expand the rights of the Committee or to confer standing to theCommittee where it does not otherwise exist.[7] These are issues best left for another day.

Having properly interpreted the language of the agreement, the bankruptcy court's approval can only be reversed on appeal if the bankruptcy court clearly abused its discretion by authorizing it. Martin v. Cox (In re Martin), 212 B.R. 316, 319 (B.A.P.

_____

[7]Whereas a debtor-in-possession "has explicit statutory authority to institute suit on behalf of the estate with which it is entrusted, *see* 11 U.S.C. §§ 323, 704, 1106 and 1107, there is no such explicit authority for creditors' committees to initiate adversary proceedings." Official Comm. of Unsecured Creditors v. Hudson United Bank (In re America's Hobby Center, Inc.), 223 B.R. 275, 280 (Bankr. S.D.N.Y. 1998)(*citing* Unsecured Creditors Comm. v. Noyes (In re STN Enters. Inc.), 779 F.2d 901, 904 (2d Cir. 1985)). On the other hand,

> [a] creditors' committee may acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings.

Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.), 262 F.3d 96, 99-100 (2d Cir. 2001)(*citing* Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. (In re Spaulding Composites Co.), 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997).

8th Cir. 1997).  The bankruptcy court did exactly what ReGen requested; it approved the stipulation as drafted and did not abuse its discretion in doing so.  The bankruptcy court's decision should be affirmed.[8]

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT

---

[8] I agree with the majority opinion that the Stipulation was entered into by the debtor-in-possession and that this appeal was not moot.