**In re TRISM, INC., et al., Debtors.**

No. 01–31323–JWV.

United States Bankruptcy Court,
W.D. Missouri.

Nov. 25, 2002.

Cynthia Dillard Parres, Laurence M. Frazen, Mark G. Stingley, William Jeffrey Maloney, Bryan Cave LLP, Kansas City, MO, Frank W. Lipsman, Morton, Hubbard, Ruzicka & Kreamer, Olathe, KS, Timothy S. Richards, Neville, Richards, DeFranci & Wuller, Belleville, IL, for debtor.

Jerry L. Phillips, Office of the U.S. Trustee, Kansas City, MO, for United States Trustee.

Kip A. Stetzler, Office of the Missouri Attorney General, Kansas City, MO, for Missouri Division of Workers' Compensation.

Janice E. Stanton, Kansas City, MO, for Logan & Company, Inc., Mississippi Farm Bureau Insurance, Stanton & Redlingshafer, LLC, Kansas City, MO, Latisha Robinson, Hampton, VA.

Lisa A. Epps, Nicholas A. Franke, Scott J. Goldstein, Spencer, Fane, Britt & Browne LLP, Kansas City, MO, for Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

This matter is before the Court on remand from the Bankruptcy Appellate Panel of the Eighth Circuit. In the proceeding before the Bankruptcy Appellate Panel,[1] ReGen Capital III, Inc., ("ReGen") appealed this Court's previous Order which approved a stipulation between ReGen and Trism, Inc., and its affiliated debtors ("Debtors" or "Trism") but which at the same time sustained the objection of the Official Committee of Unsecured Creditors ("Committee") to that stipulation. The Bankruptcy Appellate Panel held that the Court could not approve the stipulation and sustain the objection, and remanded to this Court for an evaluation of the reasonableness of the stipulation and a ruling of either approval or disapproval of the stipulation.

Pursuant to the order of the Bankruptcy Appellate Panel, on November 6, 2002, the Court conducted an evidentiary hearing on the Debtor's Amended Motion to approve the settlement. Evidence was presented by the Debtor, ReGen, and the Committee, and arguments were heard. The Court took the matter under advisement and permitted ReGen and the Committee to submit post-hearing briefs on the issues. The Court has reviewed and considered the evidence and the arguments and is now prepared to rule.[2]

---

1. *ReGen Capital III, Inc. v. Official Committee of Unsecured Creditors (In re Trism, Inc.), 282* B.R. 662 (8th Cir. BAP 2002).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a proceeding for approval of a compromise or settlement pursuant to Rule 9019, Fed. R.Bankr.P. This Memorandum Opinion and

## FACTUAL BACKGROUND

A comprehensive statement of the factual background of the present dispute was set out by the Bankruptcy Appellate Panel in its opinion. The Court will take the liberty of utilizing that background herein, without the use of quotation marks and with such revisions as are appropriate for purposes of this Memorandum Opinion and Order.[3]

On September 16, 1999, Trism and several of its affiliates (the "Delaware Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). On November 16, 1999, AT & T filed an unsecured proof of claim in the amount of $703,689.05. ReGen is the assignee of the AT & T claim. On December 9, 1999, the Delaware Bankruptcy Court entered its order confirming the Delaware Debtors' Second Amended Plan of Reorganization, which provided that non-priority unsecured claims, including the ReGen claim, were unimpaired by the Plan.

The Delaware Debtors failed to make payments on account of the ReGen claim as required by the confirmed plan. On December 13, 2000, ReGen filed a motion to compel such payments. The motion to compel and the Delaware Debtors' objection thereto were settled pursuant to a stipulation and order approved by the Delaware Bankruptcy Court on March 20, 2001. Pursuant to the stipulation and order, the Delaware Debtors were required to make payments to ReGen. In the event the Delaware Debtors failed to make a required payment when due, the Delaware Debtors authorized ReGen to confess judgment against the Delaware Debtors for the unpaid amount of the debt plus interest and attorneys' fees.

The Delaware Debtors made the first payment due under the stipulation but failed to make any subsequent payments. On May 2, 2001, ReGen commenced proceedings in the Superior Court of the State of Delaware in and for New Castle County (the "Delaware State Court") for a judgment in accordance with the stipulation. On June 1, 2001, the Delaware State Court entered judgment (the "Judgment") in favor of ReGen and against the Delaware Debtors. ReGen claims that, after entry of the Judgment, it registered the Judgment in those jurisdictions where assets of the Delaware Debtors were located, resulting in the creation of liens on such assets.[4]

Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052, Fed.R.Bankr.P.

3. However, the Court does so with some reservations. Most of the factual background set out in the Bankruptcy Appellate Panel's opinion was never developed before this Court in the first hearing on the Debtors' Motion for approval of the Stipulation on January 30, 2002, because the parties did not adduce evidence at that hearing. The Motion was submitted on the arguments of counsel and on the papers filed. Perhaps the parties submitted stipulated facts to the Bankruptcy Appellate Panel.

4. The Bankruptcy Appellate Panel found, as a matter of fact, that ReGen "registered the Judgment in those jurisdictions where assets of the Delaware Debtors were located, resulting in the creation of liens on such assets." As discussed hereinbelow, this Court has not heard any evidence concerning whether the liens were properly filed or registered, or where and when the liens became effective, etc., and therefore this Court does not consider it an established fact that ReGen properly registered the Judgment or that liens were created on the Debtors' assets, as the Bankruptcy Appellate Panel seems to assume. This Court is puzzled as to how the Bankruptcy Appellate Panel could make such a factual finding when no such evidence was ever presented to this Court in the first instance. Those issues are the subject of an Adversary Proceeding filed in this Court by the Commit-

In addition to obtaining the Judgment, ReGen filed a motion to compel compliance with the stipulation and order ("Motion to Compel") with the Delaware Bankruptcy Court. On October 4, 2001, the Delaware Bankruptcy Court entered an order granting the motion and directing the Delaware Debtors to pay ReGen all amounts due under the stipulation and order within three business days and to pay ReGen's attorneys' fees and costs associated with the motion. The Delaware Debtors failed to make such payment.

On November 13, 2001, ReGen filed a motion to hold the Delaware Debtors in contempt (the "Contempt Motion"). While such motion was pending before the Delaware Bankruptcy Court, Trism and its affiliated debtors (the "Missouri Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Missouri (referred to herein as "this Court") on December 18, 2001. That same day the Delaware Debtors filed a motion (the "Rule 1014 Motion") with the Delaware Bankruptcy Court under Federal Rule of Bankruptcy Procedure 1014(b) seeking a determination that the bankruptcy proceedings should proceed in this Court. ReGen objected to such motion. A hearing on the Contempt Motion and the Rule 1014 Motion was scheduled before the Delaware Bankruptcy Court on January 4, 2002.

Notwithstanding the motions pending in the Delaware Bankruptcy Court, the Missouri Debtors and ReGen entered into a stipulation (the "Stipulation"), subject to the approval of this Court, pursuant to which the parties stipulated, *inter alia,* that ReGen holds an allowed claim in the amount of $434,954.59 plus interest and attorneys' fees (the "Allowed Claim"); that the Missouri Debtors acknowledge that the Allowed Claim is secured by valid liens on certain property; that upon the Stipulation becoming final and non-appealable, ReGen shall be entitled to payment of the full amount of the Allowed Claim from the proceeds of the anticipated sale of the Missouri Debtors' assets to the extent of the value of its valid liens; that the Stipulation shall be served on all creditors and parties in interest and any creditor or party in interest who fails to object to the Stipulation or whose objection is overruled shall be bound by the terms of the Stipulation; that ReGen shall withdraw its objection to the Rule 1014 Motion; that ReGen shall withdraw the Contempt Motion; that ReGen shall support the Missouri Debtors' efforts to seek approval of and consummate a sale of assets as soon as possible; and that upon the approval of the Stipulation on a final and non-appealable basis, the Missouri Debtors and their successors and assigns on the one hand and ReGen and its successors and assigns on the other hand each fully releases and discharges the other from and against any claim, right, or cause of action arising in, arising out of, or related to the Delaware bankruptcy case or the Missouri bankruptcy case that arose or accrued prior to the date of the Stipulation.

At the January 4, 2002, hearing before the Delaware Bankruptcy Court, counsel for the Debtors and for ReGen announced the terms of the Stipulation on the record. Counsel for the Committee participated in that hearing by telephone.

On January 7, 2002, the Missouri Debtors filed a motion with the Missouri Bankruptcy Court pursuant to Federal Rule of

tee. *Official Committee of Unsecured Creditors v. ReGen Capital III, Inc.,* Adv. Pro. 02–4125.

Bankruptcy Procedure 9019 (the "Rule 9019 Motion") seeking approval of the Stipulation. A hearing on the Rule 9019 Motion was initially set for January 23, 2002, but at the request of the Committee was delayed until January 30, 2002. The Missouri Debtors also filed a motion to sell substantially all of their assets (the "Sale Motion") which was also set for hearing on January 30, 2002.

On January 28, 2002, the Committee filed an objection to the Rule 9019 Motion wherein the Committee attempted to reserve its right to object to ReGen's claim for interest and attorneys' fees and to object to the validity of ReGen's liens.

On January 30, 2002, this Court held a hearing on the Rule 9019 Motion and on the Sale Motion. This Court orally approved the Stipulation and sustained the Committee's objection to the Rule 9019 Motion. This Court then approved the Sale Motion later that same day, without objection by ReGen. This Court subsequently entered a written order on February 8, 2002, approving the Stipulation and sustaining the Committee's objection to the extent the Stipulation attempted to bind the Committee. The order expressly provided that "neither the [Rule 9019 Motion] nor the Stipulation are binding on the Committee. Nothing in this Order shall restrict the Committee's ability to object to the allowance, extent and priority of ReGen's alleged judgment liens (the 'Liens'), including the avoidability of the Liens, on certain of Debtors' real property."

ReGen appealed this Order, and as indicated above, the Bankruptcy Appellate Panel reversed this Court's ruling and remanded the matter to this Court for further hearing and ruling.[5]

## DISCUSSION

■■■■ In remanding this matter to the Bankruptcy Court, the Bankruptcy Appellate Panel found that this Court, in ruling on the Debtor's Amended Motion to approve the settlement with ReGen, had failed to address certain established factors bearing on the reasonableness of the settlement. Those factors were set out by the Eighth Circuit Court of Appeals in *Drexel Burnham Lambert Incorporated v. Flight Transportation Corporation (In re Flight Transportation Corporation Securities Litigation)*, 730 F.2d 1128, 1135 (8th Cir.1984), (herein *"Flight Transportation"*) and are: (1) the likelihood of success in the litigation; (2) the difficulties, if any, in collection matters; (3) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and a proper deference to their reasonable views. See also *American Can Co. v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 605, 607 (5th Cir.1980). The Court is to consider whether the proposed settlement "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir.1983). The approval of a settlement is committed to the sound discretion of the trial court. *Flight Transportation*, 730

---

**5.** In the Conclusion of its Order, the Bankruptcy Appellate Panel stated:

> The Missouri Bankruptcy Court erred in approving the settlement under Federal Rule of Bankruptcy Procedure 9019 while sustaining the Committee's objection thereto. *The Court must evaluate the reasonableness of the proposed settlement, taking into consideration the reasonable views of the*

> *creditors, and either approve or disapprove the presented settlement.* Accordingly we remand this matter to the Missouri Bankruptcy Court to apply the four-prong test and either overrule the objection and approve the Stipulation or sustain the objection and deny the motion seeking approval. *ReGen Capital,* 282 B.R. at 669. (emphasis added)

F.2d at 1135, citing *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975).

### 1. The Debtors' Motion is not moot

Before the Bankruptcy Appellate Panel, the Committee argued that ReGen's appeal was moot because ReGen had already performed its part of the settlement—it had withdrawn the Contempt Motion, it had withdrawn its objection to the Rule 1014(b) Motion, and it had supported (or at least not opposed) the Debtors' motion to approve the sale of substantially all of their assets. The Bankruptcy Appellate Panel overruled that argument and held that the appeal was not moot. At the same time, it suggested that the Committee would be free, on remand, to raise the mootness issue with Court, which the Committee has done in its post-trial brief.

The Committee argues that the Debtors' Motion has been rendered moot because, as just stated, ReGen has performed its part of the settlement and because the sale of the Debtors' assets was approved by this Court on January 30 and has been consummated.[6] ReGen's performance of its obligations under the settlement cannot be undone, the Committee asserts, and therefore ReGen cannot be restored to its prior position by this Court's refusal to now approve the Debtors' Motion. Further, the Committee has filed its adversary complaint against ReGen challenging the validity of ReGen's alleged judgment liens, as authorized by this Court's prior Order approving the Stipulation.

Much of what the Committee says is true, but a controversy nevertheless remains and can only be resolved by approval or disapproval of the Debtors' Motion. Until there is a ruling on the Motion, there

will be uncertainty and debate over whether the Committee is or is not free to proceed with litigation against ReGen. A ruling of the Motion on its merits will resolve that controversy. That issue should be dealt with now. Therefore, the Court finds that the Motion is not moot and should be decided on its merits.

### 2. Application of the *Flight Transportation* factors to the Stipulation

The Debtors' Motion does not lend itself readily to analysis under the *Flight Transportation* factors, because it does not involve settlement of a traditional lawsuit for damages. The present situation is also somewhat unusual in that many of the events that were the subject of the compromise with ReGen have transpired, and the settlement has, for the most part, been carried out since the Court first approved the Stipulation on January 30, 2002 (as memorialized in the Order entered on February 8, 2002). Nevertheless, as directed by the Bankruptcy Appellate Panel, the Court has conducted an evidentiary hearing and has fully considered the evidence adduced and the legal arguments advanced by the parties in reaching its decision as set out herein on the reasonableness of the Stipulation.

█ As a threshold matter, the Court concurs with ReGen that the reasonableness of the Stipulation should be determined as of the time the Motion was first presented to the Court for approval, and not in light of events that have taken place since that time. *TCF Banking and Savings v. Leonard (In re Erickson)*, 82 B.R. 97, 100 (D.Minn.1987). *Cf. Newman v. Stein*, 464 F.2d 689, 696 (2nd Cir.1972) ("it would be inappropriate for a *reviewing*

---

**6.** In fact, at the January 30 hearing, both the Debtors and ReGen stated that they had substantially performed the settlement prior to that date. (Comm.Ex. 1, pp. 359, 361)

*court* to freeze matters as of the moment at which the parties entered into an agreement and ignore subsequent developments") (emphasis added).

■ Because the settlement with ReGen does not satisfy the four factors test of *Flight Transportation,* the Court finds that the Stipulation is unreasonable and therefore the Court will not approve the Debtor's Amended Motion, but instead will sustain the Committee's Objection to approval of the Stipulation.

Primarily, the Court will not approve the Stipulation because, simply put, the Stipulation is not in the best interests of the creditors of the bankruptcy estate. Thus, the settlement fails to satisfy the fourth factor in the *Flight Transportation* test. By prohibiting the creditors from challenging the validity, extent, and priority of ReGen's alleged liens on the Debtors' real properties, including whether the liens were preferential or were fraudulent transfers under the Bankruptcy Code, the Stipulation potentially prevents the creditors from recovering assets of substantial value to the estate that could eventually be distributed to the creditors in cash dividends. In the Stipulation (¶ 2), the Debtor agrees that ReGen has validly perfected liens on "certain property" of the Debtors, but that "certain property" is not further identified. However, Ralph Nelson, the Debtor's president,[7] conceded that the Debtor had conducted almost no investigation to determine whether ReGen had valid liens against any of the Debtor's properties. At the hearing on November 6, Nelson was asked by counsel for the Committee if the Debtor had conducted any investigation into the validity of ReGen's asserted liens. Nelson replied that "[w]e had some impressions but they were not the basis of any real research." In partic-

ular, Nelson did not believe that the lien claimed by ReGen on the Debtors' property in Georgia was valid, based on advice Nelson had received from an attorney in Georgia, and the Debtor had not had counsel in any other states review the liens claimed by ReGen in those other states.

The Motion to approve the Stipulation was filed on January 7, 2002. The Amended Motion was filed later that same day. This was just 20 days after the Debtors had filed their Chapter 11 Petition, on December 18, 2001. The Debtors requested that the Motion be heard on an expedited basis on January 23, 2002, some 16 days later. However, the Committee on January 17 requested that the hearing be pushed back to January 30, which request was granted. As a consequence of these very tight time frames, at the time the Stipulation was originally presented to the Court for approval, the Committee—like the Debtor—had not conducted any investigation to determine whether the liens claimed by ReGen were valid or whether they had been obtained during the preference period established by 11 U.S.C. § 547. Counsel for the Debtors stated at the hearing on January 30 that the judgments "probably were filed within the 90 days" preceding the December 18, 2001, filing. (Comm.Ex. 1, p. 363) If so, the liens could very well be preferential under 11 U.S.C. § 547. The Debtors owned property in several states, and considerable time would have been required to fully investigate and determine the status of ReGen's claimed liens. The Stipulation not only deprived the Committee of any opportunity to investigate the validity and priority of ReGen's claimed liens, but more importantly it conclusively established that the liens claimed by ReGen were valid, at least as to "certain property," which was otherwise unidentified. Upon approval of

---

7. Nelson is also an attorney.

the Stipulation by the Court, the liens would be beyond any challenge, particularly any challenge that might be made by the Committee on behalf of the unsecured creditors, who would have the most to lose (at least potentially) if ReGen's claimed liens were or are valid. This unchallenged validity would be established *without any investigation and without requiring any proof whatsoever of perfection or validity of the liens on the part of ReGen, and without specific identification of the property to which the purported liens attached.* Approval of the Stipulation would render the validity of ReGen's liens a *fait accompli* and deprive the Committee of any chance to challenge the liens and perhaps recover assets of substantial value to the creditors.[8]

In its post-hearing arguments, ReGen asserts that the settlement was in the paramount interest of the creditors because it permitted the Debtors to make a quick sale of substantially all of their assets without ReGen's opposition, and that this was beneficial because it allowed the Debtors to maximize the value of their assets. This argument is totally without merit. The only creditor to benefit from the settlement was ReGen, because it would be paid its claim of $434,954.59, plus interest and attorneys' fees, without being required to prove up its judgment liens. The Court cannot comprehend why ReGen would have opposed the prompt sale of the Debtors' assets, and in fact ReGen has never advanced any grounds for opposing the sale, which was proposed in an amount sufficient to pay ReGen's claims in full. Perhaps ReGen never had any basis for opposing the sale, and that the threat to oppose the sale was an empty threat designed solely to extract the settlement from the Debtors. In any event, ReGen's argument totally ignores the impact of the settlement on all other creditors, who would be highly prejudiced by the loss of potential assets that could be used to help pay their claims if ReGen's liens were found to be invalid or preferential.

For these reasons, the Court believes that the Stipulation is not in the paramount interest of the general unsecured creditors and therefore fails to meet the fourth prong of the *Flight Transportation* test. For the same reason, the settlement is not fair and equitable vis-a-vis the other creditors in the bankruptcy estate. *Triple E Transport, Inc. v. Caterpillar, Inc. (In Matter of Triple E Transport)*, 169 B.R. 368, 373 (D.La.1994).

■ Interestingly, ReGen could have avoided the Court's reaching this conclusion after the second hearing on November 6 by producing proof that its liens on the Debtor's properties were, indeed, timely perfected and not preferential.[9] Had such proof been produced, it is more likely than not that the Court would approve the Stipulation. However, not only did ReGen's counsel not adduce evidence of timely, nonpreferential perfection at the November 6 hearing, but counsel's incomplete and at times combative and even evasive testimo-

---

8. At the January 30 hearing, counsel for the Committee stated that their preliminary review of materials provided by ReGen indicated that the confession of judgment was taken in the Delaware state court within the preference period as to several of the Debtors and that judgment liens were registered in 11 different states within the preference period.

9. The Court recognizes, of course, that these are the same issues that are raised in the Adversary Complaint filed by the Committee against ReGen in this Court, and the Court does not wish to prejudge that case. At the same time, counsel for ReGen should have been very well aware that this concern was uppermost in the Court's mind from comments that were made at the first hearing on the Motion on January 30.

ny lends support to the Court's concern that ReGen's claims are not perfected or may be preferential.[10] As a proponent of the Debtors' Motion, the Court believes that ReGen shared with the Debtors the burden of persuasion that the settlement is in the best interests of the estate. *In re Bell & Beckwith,* 77 B.R. 606, 612 (Bankr. N.D.Ohio 1987).

■ ReGen argues in its post-trial brief that the settlement provided several tangible benefits for the Debtor. It settled the contempt motion that had been filed by ReGen in Delaware, it removed ReGen's opposition to allowing the Chapter 11 proceedings to go forward in Missouri, and it removed ReGen's objections to the expedited sale of the Debtor's assets. On the other side of the coin, the Stipulation was designed to settle ReGen's potential exposure to claims that its liens were not validly or timely perfected so as to pass muster under the Bankruptcy Code. ReGen's analysis of the benefits overlooks, however, the *detriments* of the agreement to the general unsecured creditors, which is one of the factors that must be considered in the *Flight Transportation* analysis. As already noted, the Stipulation, in ReGen's view, would prevent the unsecured creditors and the Committee from challenging the validity of ReGen's liens and from asserting that the liens were preferential, all without investigation or further action by the creditors or the Committee. Given the almost total lack of due diligence by the Debtor with respect to ReGen's claimed liens, it was simply unreasonable for the Debtor to enter into the Stipulation and thereby deprive the unsecured creditors of any opportunity to pursue the re-

covery of assets that could potentially produce a dividend, however small, for the benefit of those creditors. Though the settlement bought peace with ReGen for the moment, the price paid was too dear for other creditors and was not in their best interest. In fact, it was detrimental to the interests of all of the Debtors' other creditors. Moreover, as the Committee points out, these "benefits" were rather ephemeral, inasmuch as ReGen had given up prosecution of the contempt motion and its opposition to the Rule 1014 Motion in Delaware well in advance of the January 30 hearing on the Debtors' Amended Motion for approval of the Stipulation.

It is also significant that the Debtors did not consider that the Stipulation would be binding on the Committee. At the original hearing on the Debtors' Amended Motion on January 30, counsel for the Debtor stated: "It was understood between the parties that the debtor obviously was in no position to bind any other party in this case, *certainly not a committee or otherwise to that agreement.*" (Comm.Ex. 1, p. 359) (emphasis supplied) At the second hearing on November 6, Nelson, the Debtors' president, underscored that he had the same understanding of the agreement as counsel did, and further testified that, "I also have a very firm recollection that there were discussion[s] between counsel for ReGen and counsel for the creditors committee, that the creditors committee was not bound and was free to do what they wished to do." (Tr., p. 11) On the other hand, ReGen's counsel argues vigorously that the Stipulation, once approved by the Court, would be binding on the Committee.[11] Because of this disagree-

---

10. Counsel for ReGen, over his strenuous objections, was called as a witness by the Committee.

11. The Court will resist the temptation to venture into an analysis or interpretation of

the provisions of ¶ 5 of the Stipulation drafted by ReGen, which states that the Stipulation would be binding on all creditors and parties in interest "whose objection is overruled by the Court," but makes no provision as to its

ment, the Committee asserts that there has been no "meeting of the minds" and thus there is no valid contract of settlement. *B–Mall Co. v. Williamson,* 977 S.W.2d 74, 77–78 (Mo.Ct.App.1998). These problems are yet another reason for finding that the proposed settlement is not in the best interests of creditors and should not be approved.

Given the Court's determination that the settlement was not in the best interests of the Debtors' creditors, the other factors in the *Flight Transportation* analysis do not require extensive discussion. However, the Court has considered them and will briefly discuss them.

The first listed factor is the likelihood of success in the litigation. The Stipulation in this case was not designed to settle a lawsuit in the traditional sense, but it nevertheless was intended to terminate certain actions that were being taken or that could have been taken by ReGen in the first Trism Chapter 11 case in Delaware or in the Chapter 11 case filed in this Court on December 18, 2001. As set out above, ReGen was opposing Trism's second filing in this Court and was attempting to have the bankruptcy proceedings continue in

Delaware, rather than in Missouri. ReGen also had pending in the Delaware Bankruptcy Court a motion to hold the Debtor in contempt for failing to pay ReGen in accordance with the terms of Trism's confirmed Chapter 11 Plan there and for violating court orders directing the payments to be made.[12] ReGen's counsel was confident that he would have been successful in convincing the Delaware Bankruptcy Court to retain jurisdiction over the Debtor pursuant to the provisions of Federal Rule of Bankruptcy Procedure 1014(b). Also, ReGen's counsel was confident that, if the Delaware Bankruptcy Court exercised its prerogative under Rule 1014(b) and retained the case in Delaware, ReGen would most likely have been successful on its motion to hold the Debtor in contempt, inasmuch as the Debtor had not made the payments required under the confirmed Plan.[13]

More critical than those matters, however, in this Court's view and apparently in the Debtors' view, was the motion to allow the Debtor to sell substantially all of its assets to a Missouri buyer. That motion was filed in the Missouri case on January 7, 2002, and had originally been set for hearing on January 23, 2002; it was not

binding effect on creditors and parties in interest whose objections are sustained by the Court (such as the Committee's objection was). The ambiguity of that paragraph is apparent for all to see.

**12.** The Committee points out in its post-hearing brief that ReGen's withdrawal of the contempt motion was of no benefit to the Debtors' estates or creditors because prosecution of the contempt motion was stayed by the automatic stay of 11 U.S.C. § 362. The Court agrees with the Committee.

**13.** Bankruptcy Rule 1014(b) provides in its entirety:

(b) Procedure when petitions involving the same debtor or related debtors are filed in different courts

If petitions commencing cases under the Code are filed in different districts by or against (1) the same debtor, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.
Rule 1014(b), Fed.R.Bankr.P.

filed in the Delaware case. ReGen had made clear to the Debtor that ReGen would oppose the sale motion unless the parties were able to reach an agreement. The sale motion was extremely critical to the Debtor. CIT, its principal secured creditor, was putting extreme pressure on the Debtor to either sell the assets by January 31 and pay the debt owed to CIT, or CIT would begin to foreclose on or seize all of the Debtors' assets. While there were several potential buyers, one potential buyer in particular had made an acceptable offer for the assets and the Debtor had determined that it would sell the assets to that party if Court approval could be obtained. The Debtors were concerned that, if they did not enter into the Stipulation with ReGen, they might not be able to obtain approval of the Delaware Bankruptcy Court in sufficient time to enable them to consummate the sale of assets within the time frame demanded by CIT.

As in all cases where litigation is involved, it is difficult to know—or predict—whether one party or the other might be successful. The threshold question was whether the Delaware Bankruptcy Court, pursuant to Rule 1014(b), would determine that Trism's bankruptcy proceedings should be maintained in Delaware or should be permitted to continue in Missouri. Counsel for ReGen argues that the Debtor's chances of success on the Rule 1014(b) motion were "uncertain at best" because the Delaware Bankruptcy Court had held two hearings on the Rule 1014(b) motion and still had not granted the mo-

tion. Counsel further argues that the Debtor had "very little likelihood" of success on the contempt motion because the Debtors had violated "at least" three orders of the Delaware Bankruptcy Court and had not filed any response to ReGen's contempt motion. Finally, ReGen argues that, had the Stipulation not been entered into, ReGen would have objected to the sale of the Debtor's assets and, without ReGen's consent, the Debtors could not have consummated the sale of assets without satisfying one of the other standards contained in § 363(f) of the Bankruptcy Code.[14]

We do not, of course, have any way of knowing what was in the Delaware Bankruptcy Court's mind. Certainly, it appears that there had been some problems with the Debtors' performance under the confirmed Plan of Reorganization in Delaware, and it appears that ReGen was vigorously pursuing its available remedies there. This Court is willing to accept that the Debtor would not have prevailed on the Rule 1014(b) motion and on the contempt motion. However, this Court is not willing to accept that the Debtor would not have been able to obtain approval for the sale of its assets in the Delaware Bankruptcy Court just as it did in this Court, whether ReGen did or did not consent to the sale. This Court, as the parties know, has had some recent experience in the Bankruptcy Court in Delaware, and this Court has no doubt that the Delaware Bankruptcy Court would have been able to hear and act on the Debtors' motion to sell

---

**14.** Section 363(f) provides:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

the assets within the required time frame. The Court further believes that the Delaware Bankruptcy Court, had it had the opportunity, would have approved the sale, even over the objections of ReGen, because the Debtors sold the assets for an amount sufficient to satisfy all uncontested liens (i.e., other than ReGen's claimed liens) on the assets and produce almost $1,500,000.00 for the bankruptcy estate. (Comm.Ex. 1, p. 333) As protection for ReGen pending resolution of the pending issues, this Court directed that $500,000.00 be held in escrow to satisfy ReGen's liens, in the event they were found to be valid and non-preferential. Therefore, the Debtors did meet the standard of § 363(f)(3), that the assets be sold for an amount greater than the aggregate value of all liens on the assets. Additionally, ReGen could have been compelled to accept a money satisfaction of its judgment, pursuant to § 363(f)(5).

Therefore, as to the first of the four *Flight Transportation* factors, it appears that ReGen could very well have been successful on the Rule 1014(b) and contempt motions, but that the Debtors would likely have prevailed on the most critical issue, the sale of the bulk of the Debtors' assets by January 31, 2002. This latter consideration tips the scales toward disapproval of the settlement, in this Court's view.

The second and third factors in the *Flight Transportation* test are essentially non-factors in this case. The second factor—the difficulties of collection—is not applicable, because the matters at issue here did not involve the collection of any judgment or any monetary payment from one party to the other. If anything, approval of the Stipulation would have made it easier for ReGen to collect from the sales proceeds the debt it is owed by the Debtors, because it would have established the validity of ReGen's liens beyond any challenge. The third factor—the complexity of the litigation and the attendant expense, inconvenience, and delay—is not of significant consequence. The matters at issue before this Court and the Delaware Bankruptcy Court were not complex.[15] While Rule 1014(b) motions and contempt motions are somewhat unusual, they are seldom complex, and they were certainly not complex in the Debtors' case. The motion for sale of assets was not at all complicated, and was the sort of motion that comes before this Court and the Delaware Bankruptcy Court on a regular basis. More significant here was the potential for delay in obtaining approval for the sale of the Debtors' assets before the deadline imposed by the Debtors' principal secured creditor, CIT, but as the Court has explained above, this was not an insurmountable hurdle and was capable of resolution without great expense or inconvenience.

## CONCLUSION AND ORDER

In summary, the settlement entered into by the Debtors and ReGen cannot be approved because it does not satisfy the test set out in the *Flight Transportation* case, primarily because it is not in the best or paramount interests of the creditors of the bankruptcy estate.

Therefore, it is

**ORDERED** that the Committee's Objection to the Debtors' Amended Motion for approval of the settlement entered into by the Debtors and ReGen Capital III, Inc., be and is hereby SUSTAINED, and

---

**15.** Counsel for ReGen contends that the preference litigation that has been filed by the Committee in this Court is highly complex and involves numerous difficult issues. However, the complexity of that litigation is not at issue in this present proceeding; those are matters for another day.

the Debtors' Amended Motion be and is hereby DENIED.