### In re TRI–STATE ETHANOL COMPANY LLC, Debtor.

### Bankruptcy No. 03–10194.

United States Bankruptcy Court, D. South Dakota.

June 19, 2007.

A. Thomas Pokela, Sioux Falls, SD, William F. Demarest, Jr., Blackwell Sanders Peper Martin LLP, Washington, DC, for Debtor.

DECISION RE: TRUSTEE JOHN S. LOVALD'S PROPOSED SETTLEMENT WITH NORTH CENTRAL CONSTRUCTION, INC.

IRVIN N. HOYT, Bankruptcy Judge.

The matter before the Court is Trustee John S. Lovald's *Motion to Approve Com-* *promise Agreement with American Prai-* *rie Construction Co., f/k/a North Central* *Construction, Inc.,* the joinder in the motion filed by North Central Construction, Inc., and the objection to the motion filed by Tri–State Financial, L.L.C. This is a core proceeding under 28 U.S.C. § 157(b)(2). This *Decision* and accompanying order shall constitute the Court's findings and conclusions under Fed. Rs.Bankr.P. 7052 and 9014(c). As set forth below, the motion will be granted.

## I.

The details of this bankruptcy case through early July 2006 are set forth in a decision entered September 1, 2006. Those findings are incorporated herein by reference, especially as to the roles of Chapter 7 Trustee John S. Lovald, North Central Construction, Inc. ("North Central"),[1] and Tri–State Financial, L.L.C. ("Tri–State Financial"); North Central's and Tri–State Financial's relationships with Debtor Tri–State Ethanol Company LLC, and its principals and counsel; and the unfruitful efforts of many parties and their counsel to resolve by agreement the large claims in this case.

In this decision, the Court will set forth those facts that are more particularly relevant to the claims held by North Central against the bankruptcy estate, the claims held by the bankruptcy estate against North Central, and Trustee Lovald's proposed settlement of both.

Tri–State Ethanol Company LLC constructed and operated, for a short time, an ethanol plant near Rosholt, South Dakota. The plant was its primary asset. When the plant was built, the general contractor

---

1. During the pendency of this case, North Central became known as American Prairie Construction Company.

was North Central, and the engineer was Michael J. Gaylor, doing business as Gaylor Engineering. The plant was in operation during 2002 but was shut down for maintenance in November of that year. At the time of the shutdown, the plant was running inefficiently and was faced with high propane costs. While it was shut down, an explosion occurred at the plant on December 31, 2002. During 2003, Debtor used insurance proceeds to repair the damage. The plant, however, did not resume ethanol production. Tri–State Ethanol Company LLC ("Debtor") filed a Chapter 11 petition in bankruptcy on May 23, 2003.

On July 1, 2003, North Central filed a proof of claim for $3,611,882.93. On the proof, North Central said its claim arose from goods sold and services performed from October 12, 2000, to October 4, 2002, and was fully secured.

Debtor never obtained confirmation of a Chapter 11 plan. The case was converted to Chapter 7 on July 29, 2004. The United States Trustee appointed John S. Lovald as the Chapter 7 trustee.

North Central filed a proof of claim on December 20, 2004 that amended its July 1, 2003 claim. In this amended proof of claim, North Central stated it held a fully secured claim for $3,611,882.93, plus post-petition interest, attorneys' fees and costs, and its equity interest. North Central calculated the post-petition interest to be $542,733.35. It also said its claim included subcontractor Interstates Electric & Engineering Company, Inc.'s ("Interstates Electric") claim of $569,115.27, plus interest from December 15, 2004.[2] North Central's amended proof of claim did not value its claim for attorneys' fees and costs un-

der 11 U.S.C. § 506(b) or its equity interest.

Trustee Lovald sold the ethanol plant by court-approved auction in early 2005. Tri–State Financial was ultimately the successful bidder.

On April 13, 2005, North Central filed a *Motion to Authorize Payment of Claim.* Therein, it said it wanted Trustee Lovald to pay its claim after crediting the amount already paid by the trustee to Interstates Electric. It noted its additional claim for attorneys' fees and costs and its equity claim would be reserved for later determination.

On April 18, 2005, Trustee Lovald objected, saying North Central's claim amount was disputed and he would be hiring counsel to address the matter. On April 19, 2005, Trustee Lovald filed an objection to North Central's proof of claim.[3] Therein, Trustee Lovald said some of North Central's claim may represent work and materials that were not authorized by contract or change orders, and some work or materials provided by North Central may have been defective, resulting in damage to Debtor. He asked that North Central's claim be determined after an appropriate time for discovery and mediation. Tri–State Corn Processors Cooperative joined in the trustee's objection.

On April 22, 2005, Trustee Lovald filed an application seeking to employ Woods, Fuller, Shultz & Smith P.C. ("Woods Fuller") as special counsel under 11 U.S.C. § 327(e) to handle estate matters related to the ethanol plant's design, construction, and explosion, including, but not limited to, North Central's and Gaylor Engineering's claims. He disclosed Woods Fuller had represented Debtor pre-petition and during the Chapter 11 on these and other

---

**2.** Interstates Electric also filed its own proof of claim.

**3.** Trustee Lovald's objection did not specifically refer to the amended proof of claim.

matters and had an unsecured claim against the estate for $168,000.00, plus interest. No objections were filed, and the employment application was approved.

On April 28, 2005, Tri–State Financial filed an objection to North Central's motion for payment and to North Central's proof of claim. Therein, it highlighted terms of certain documents related to the construction of the ethanol plant, discussed change orders and their cost, stated there were production problems, and complained about the lack of invoices to support North Central's claim. Tri–State Financial also argued North Central had breached in eight ways its obligations under the construction contract and express and implied warranties and thus no further payments to North Central were appropriate. Tri–State Financial challenged North Central's liens on four grounds. In addition, Tri–State Financial made allegations of tortious interference against North Central's principal, Kim Buchanan, and argued damages for these actions should be paid by North Central to Debtor. Tri–State Financial also blamed a welder employed by North Central for the December 31, 2002, explosion at the plant and sought additional damages for that. Tri–State Corn Processors joined Tri–State Financial's pleading.[4]

At some point, North Central commenced litigation against Tri–State Financial in federal district court over a settlement that had been reported to the Bankruptcy Court on June 21, 2004. Based on a scheduling letter on which this Court was copied, it appears that matter is set for trial in August 2007.

Adversary proceedings pending in mid-2005 were: Adversary No. 03–1032, a construction lien proceeding brought by North Central during the Chapter 11 against Debtor and several creditors that was similar to a pre-petition state court action involving many of the same parties; Adversary No. 05–1006, wherein Trustee Lovald sought a determination that Tri–State Financial's claim should be treated as equity and subordinated; and Adversary No. 05–1009, wherein Tri–State Financial sought a determination that North Central's liens should be transferred to the bankruptcy estate and North Central's claim should be treated as unsecured and equitably subordinated to all other general unsecured claims.[5] There was limited progress in each.

Extensive and time-consuming efforts to reach a global resolution of the pending

---

4. On April 28, 2005, Debtor also filed an objection to North Central's *Motion to Authorize Payment of Claim.* It said,

> [T]here are many issues as to the proper amount of this claim and the authorization to pay at this time would make such issues meaningless and create additional problems for the Trustee if the Court were to determine the amount claimed by American Prairie Construction Company is improper.

Debtor did not participate in the hearing on Trustee Lovald's proposed settlement of North Central's claim.

5. On July 7, 2005, Trustee Lovald asked the Bankruptcy Court to allow him to bring Gaylor Engineering into Adversary No. 05–1009 by third-party complaint or for the Court to abstain from hearing that adversary and allow the parties to return to state court. The Court denied the trustee's motion the same day because of the timing and because the adversary did not lend itself to a third-party complaint against Gaylor Engineering. The denial was without prejudice to an objection by Trustee Lovald to Gaylor Engineering's proof of claim and without prejudice to Trustee Lovald's commencing an adversary proceeding against Gaylor Engineering to determine the validity, priority, and extent of any lien claimed by Gaylor Engineering. Trustee Lovald commenced an adversary proceeding, no. 05–1011, against Gaylor Engineering on July 13, 2005, but he voluntarily dismissed it a month later.

adversary proceedings and most major claims through mediation or negotiation failed. Thus, a settlement with Tri–State Financial that Trustee Lovald had originally proposed on May 17, 2005, was set for an evidentiary hearing. The only objector to this proposed settlement was North Central Construction, but it withdrew its objection just as the June 13, 2006 hearing began. After receiving evidence, the Court approved the settlement by order entered June 14, 2006. The approved settlement gave Tri–State Financial a Chapter 11 administrative expense of $793,654.42 for advances it made to Debtor between May 23, 2003, and July 28, 2004, and a general unsecured claim of $1,190,000.00 for its post-conversion advances, which is to be paid only after all other timely-filed general unsecured claims are paid in full.

On June 20, 2006, Trustee Lovald filed a motion to approve a settlement with North Central. Before the objection period on that motion expired, Tri–State Financial filed a motion asking the Court to allow it to intervene in the contested matter of Trustee Lovald's objection to North Central's proof of claim, despite the fact Tri–State Financial had its own objection to North Central's proof of claim pending and despite the fact Trustee Lovald had just noticed a settlement of North Central's claim for objections. On June 28, 2006, the Court entered an order holding Tri–State Financial's intervention motion in abeyance pending a resolution of Trustee Lovald's proposed settlement with North Central.

On June 29, 2006, Tri–State Financial filed a *Motion for Recusal* regarding the undersigned. All the pending matters were put on hold while the recusal motion was resolved. The recusal decision was entered September 1, 2006. Thereafter, the Court was able to return to the several pending matters, including Trustee Lovald's proposed settlement with North Central.

Tri–State Financial was the only objector to Trustee Lovald's proposed settlement with North Central. Tri–State Financial alleged the proposed settlement was "not reasonable, not in the best interests of the bankruptcy estate, and not fair and equitable." It also argued Trustee Lovald's objection to North Central's claim was inadequate, did not include several available grounds for contesting the claim, and did not assert any counterclaim for certain breaches of "any fiduciary, express contractual duty, or express warranty, or implied contractual duty or implied warranty." It challenged the adequacy of Trustee Lovald's efforts to investigate North Central's claim, both factually and legally. Tri–State Financial argued the settlement should not be approved because North Central had not cooperated with its discovery efforts. Tri–State Financial also reiterated at length its several objections to North Central's claim itself.

An evidentiary hearing on the proposed settlement of North Central's claim was held December 18, 19, and 20, 2006.[6]

---

**6.** During the December 2006 hearing, the Court reserved ruling on two exhibits: Trustee's exhibit 26, the July 22, 2005, deposition of Larry Gibson, to which an objection as to foundation and relevancy was reserved; and Tri–State Financial's exhibit LL, a November 18, 2005 letter from counsel for North Central to the Court, to which an objection as to relevancy was reserved. The objections to Trustee's exhibit 26 are sustained because the record was confusing on whether Trustee Lovald specifically reviewed this particular deposition before the settlement was reached. The objection to Tri–State Financial's exhibit LL is also sustained. Trustee Lovald did not rely on that document in negotiating his settlement with North Central, and the offeror did not make an adequate record demonstrat-

Closing arguments were received, and the matter was taken under advisement.[7]

## II.

■ A Chapter 7 trustee is permitted to compromise a claim so the estate may avoid the expense, burdens, and uncertainty associated with litigation. *ReGen Capital III, Inc. v. Official Committee of Unsecured Creditors (In re Trism, Inc.)*, 282 B.R. 662, 668 (8th Cir. BAP 2002)(citing *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D.Mo.1988)); and *Martin v. Cox (In re Martin)*, 212 B.R. 316, 319 (8th Cir. BAP 1997)(citing *Apex Oil Co.*, 92 B.R. at 866). Once the trustee is satisfied with the settlement, the trustee is required to obtain court approval of it after notice to all creditors and other parties in interest. Fed.Rs.Bankr.P.2002(a)(3) and 9019(a). The purpose of the notice is to foster input from creditors and parties in interest in the court approval process. *Trism, Inc.*, 282 B.R. at 668.

■ Whether a settlement should be approved is within the discretion of the Bankruptcy Court. *Id.* at 666 (citing *inter alia Drexel Burnham Lambert, Inc. v. Flight Transportation Corp. (In re Flight Transportation Corp. Securities Litigation)*, 730 F.2d 1128, 1135–36 (8th Cir.1984)). In considering a proposed settlement, the Court is presented with a question of fairness and equity, and it is required to determine whether the settlement is in the best interests of the bankruptcy estate. *Martin*, 212 B.R. at 319; *Trism, Inc.*, 282 B.R. at 668. The Court does not substitute its judgment for the trustee's. *Martin*, 212 B.R. at 319. Instead, the factors the Court considers include:

(1) the probability of success in the litigation;

(2) the difficulties, if any, to be encountered in the matter of collection;

(3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

(4) the paramount interest of creditors and a proper deference to their reasonable views in the premises.

*Velde v. First International Bank & Trust (In re Y–Knot Construction, Inc.)*, 369 B.R. 405, 406, 2007 WL 1650581, slip op. at 2 (8th Cir. BAP June 8, 2007) (quoting Flight Transportation Corp., 730 F.2d at 1135 (citing therein *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir.1929))).[8]

[I]t is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement. [Cite omitted.] Neither must the court find that the settlement constitutes the best result obtainable. Rather, the court need only canvass the issues to determine that the settlement

---

ing how the exhibit was otherwise relevant in determining whether the proposed settlement of North Central's claim should be approved.

7. The Court notes the parties' failure to confer on exhibits before the December 2006 evidentiary hearing to delete duplicate exhibits and better ascertain those that could be admitted without objection resulted in several hours of wasted time during the hearing. Because of the disjointed presentation of exhibits and the numerous duplications, court staff also spent more than twenty hours after the hearing checking and re-checking the record to insure an accurate exhibit list. The Court trusts this same problem will not surface in future litigation in this case.

8. The four factors are useful not only when analyzing the settlement of claims against the estate but also claims held by the estate against others. *Will v. Northwestern University (In re Nutraquest, Inc.)*, 434 F.3d 639, 644–45 (3rd Cir.2006).

does not fall " 'below the lowest point in the range of reasonableness.' " *Martin,* 212 B.R. at 319 (quoting Apex Oil Co., 92 B.R. at 867) (quoting *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608, 613 (2nd Cir.1983)); *New Concept Housing, Inc. v. Poindexter (In re New Concept Housing, Inc.),* 951 F.2d 932, 938 (8th Cir.1991). "Compromise is an art, not a science." *Nangle v. Surratt–States (In re Nangle),* 288 B.R. 213, 220 (8th Cir. BAP 2003). Though the Court must give deference to reasoned opinions of creditors, *Trism, Inc.,* 282 B.R. at 667–68, as long as the settlement falls within a range of reasonable compromises, it may be approved. *Nangle,* 288 B.R. at 220. If the settlement is reasonable, the debtor's approval of it is not needed, and the settlement does not have to benefit the debtor. *Id.* at 219–20. This is so, in part, because a trustee represents the interests of the bankruptcy estate and the estate creditors, not the debtor or the debtor's principals; he owes no fiduciary obligation to the debtor. *Id.* (cites therein).

> [R]egardless of the language used in the settlement agreement, the trustee is always bound by a duty to creditors and the estate to collect the assets of the debtor, reduce them to money, and close the estate as quickly as possible, as set forth in section 704 of the Bankruptcy Code.

*Id.* at 219.

### III.

■ When the evidence presented is considered in light of the four *Flight Transportation* factors, it is clear Trustee Lovald's proposed settlement with North Central falls within the range of reasonableness.

Trustee Lovald carefully testified how he calculated North Central's "hard-number" claim.[9] He also set forth on the record his analysis of the legal and factual issues surrounding North Central's claim and why he believed the estate would not prevail if these issues were litigated. While Tri–State Financial raised several legal and factual reasons why North Central's amended claim should not be paid in full, it failed to show the trustee's assessment of the estate's probability of success on these issues and its ability to avoid, through litigation, the remainder of North Central's amended claim over the "hard-number" was flawed. Thus, the record shows the estate has a limited probability of success on avoiding a significant portion of North Central's large claim over the "hard-number" claim the parties agreed North Central would assuredly recover.[10]

There was also no dispute on the record that the estate would have virtually no ability to collect a counterclaim judgment against North Central. Trustee Lovald testified North Central is at present without assets, and that testimony was not disputed.

Trustee Lovald and Tri–State Financial also essentially agreed litigating North Central's claim would be difficult because of the many diverse issues, the need for extensive discovery, and the need to retain

9. "Hard-number" is used to describe the claim amount North Central would almost assuredly recover at trial.

10. On Tri–State Financial's Exhibit ZZ, James Jandrain set forth four different calculations for North Central's "hard-number" claim. His lowest figure was $748,391. 00. On Exhibit 31, Trustee "hard-number" claim was Lovald calculated North Central's $1,690,039.00. When these figures are compared to North Central's amended proof of claim for $3,042,767.66, plus *substantial* post-petition interest, attorneys' fees, and other allowed costs, the amount of North Central's claim that is in dispute is, obviously, quite large.

ethanol plant construction experts. The parties also agreed litigation would further delay administration of this bankruptcy case by at least a year and a half and would cost the estate approximately $145,000.00 for attorneys' and experts' fees and associated costs. Most important, there was no dispute that all parties faced a near-impossible evidentiary hurdle. Due to the post-petition re-engineering of the plant, which was initially orchestrated by Tri–State Financial and its principals during the Chapter 11, the plant as originally constructed by North Central no longer exists. Thus, the physical evidence necessary to establish what North Central did or did not do has been substantially altered.

The fourth and final factor from *Flight Transportation* also weighs in favor of the trustee's proposed settlement at $2,000,000.00. The administration of the estate will proceed more expeditiously than if North Central's claim were litigated. Most unsecured creditors will be paid in full or nearly so. The estate will save an estimated $145,000.00 in litigation costs. Trustee Lovald will be able to turn his attention from North Central's difficult claim to the handful of remaining disputed claims.

Further, Trustee Lovald, and the Court, have given proper deference to Tri–State Financial's views regarding North Central's claim. As noted above, Trustee Lovald indicated that if North Central's claim were litigated, he would raise several of the issues raised by Tri–State Financial,

such as Kim Buchanan's alleged breach of fiduciary duty, the failure of the parties to have all change orders signed, and North Central's alleged exaggeration of its claim. However, Trustee Lovald also explained why he concluded the risks of litigating these issues did not weigh in the bankruptcy estate's favor, and he set forth the information he relied on to make that assessment. Tri–State Financial did not make a meaningful record that undermined the trustee's assessment of the amended claim and related issues, largely because Tri–State Financial focused on the issues surrounding North Central's claim, rather than the estate's probable success should those issues be litigated.[11] Indeed, Tri–State Financial, in its objection to the trustee's proposed settlement, its pre-hearing brief, and its argument at the evidentiary hearing, set forth several bases for contesting the proposed settlement.[12] Though they provided little meaningful help in applying the four *Flight Transportation* factors, those bases are categorized (in *italics*) and discussed below.

*The contesting of North Central's claim must focus on whether unsigned change orders were payable.* Trustee Lovald and Tri–State Financial essentially agreed the unsigned change orders with North Central represent a significant issue in the resolution of North Central's claim. Trustee Lovald, however, concluded the bankruptcy estate would not be able to avoid that portion of North Central's claim arising from the unsigned change orders.

11. It also bears repeating that Tri–State Financial was the only party in interest to object to the trustee's proposed settlement. While this fact alone does not lead to a conclusion that Tri–State Financial's objections were meritless, it does indicate other parties in interest concluded the settlement was in the estate's best interest.

12. Tri–State Financial also argued the trustee's proposed settlement should not be approved because North Central failed to cooperate with Tri–State Financial's discovery efforts. The Court was unable to discern that any meaningful record on this objection was made during the December 2006 hearing, and so that objection has not been considered further.

Tri–State Financial did not establish why the estate would likely prevail on this issue or show the complexity of the issue and the difficulties attendant with litigating it outweighed the benefits of the proposed settlement.

*Trustee Lovald's original objection to North Central's claim was inadequate.* Tri–State Financial argued Trustee Lovald's objection to North Central's proofs of claim failed to include several available grounds for contesting the claim and failed to assert any counterclaim for certain breaches of "any fiduciary, express contractual duty, or express warranty, or implied contractual duty or implied warranty."

This basis challenges the sufficiency of the trustee's objection to North Central's claim, not the proposed settlement of that claim. The trustee's claim objection was filed April 18, 2005. His proposed settlement was filed June 20, 2006. Thus, Trustee Lovald had garnered more than a year's worth of knowledge about the case in general and North Central's claim in particular between the time the two pleadings were filed. Most important, however, the record does not support a conclusion that perceived deficiencies in the trustee's objection to North Central's claim necessarily resulted in a settlement of that claim that fell below the lowest point in the range of reasonableness. Accordingly, this aspect of Tri–State Financial's objection is misplaced and does not foster a determination of whether the settlement itself is fair, equitable, and in the best interests of the estate.

*Trustee Lovald had an incomplete knowledge of the claims held by and against North Central when he made the decision to settle with North Central and,* similarly, *Trustee Lovald's legal and factual investigation of North Central's claim was not reasonable and therefore the set-* *tlement could not be reasonable.* Even if the Court were to assume these allegations are true, *i.e.,* Trustee Lovald did not know enough about the claims by and against North Central when he made a deal with North Central, that assumption alone is not sufficient grounds for denying approval of the settlement.

 Certainly, a trustee's knowledge and his counsel's knowledge about a contested matter—including material facts, applicable law, and anticipated results if the unresolved factual and legal issues were actually litigated—are relevant to an assessment of whether a settlement of a particular contested matter meets applicable standards. Any shortcomings in that knowledge alone, however, do not dictate disapproval of the settlement. As discussed above, the settlement itself must be shown to be unfair, inequitable, and not in the best interests of the estate. While it is less likely a settlement will meet these standards if a trustee's and his counsel's preparatory work was deficient, the Court cannot presume a proposed settlement is deficient even if preparatory work was less than ideal. The trustee is not on trial. Instead, the record must demonstrate the settlement itself does not meet the necessary standards.

All that aside, however, the record in this case amply demonstrates Trustee Lovald and his special counsel understood the factual and legal issues presented in resolving North Central's claim and they used that knowledge to negotiate an acceptable compromise. Trustee Lovald was sufficiently versed regarding North Central's claim against the estate and the estate's claims against North Central before the settlement was negotiated. At the settlement hearing, Trustee Lovald provided clear and concise testimony regarding what he reviewed and upon what he relied when negotiating the settlement with

North Central: the arbitration awards regarding litigation involving Gaylor Engineering and North Central and design and construction-related issues for two ethanol plants in Iowa; records from Debtor's plant; the results and claim figures discussed in several different mediation and settlement efforts related to the administration of this bankruptcy case, beginning in April 2003 through May 2006; depositions of persons involved in the construction of the plant, including North Central's principal, Kim Buchanan; Randy Kramer's assessment of North Central's claim; the October 22, 2003 testimony of and a report by ICM's principal, David Vandergriend, who handled the post-petition re-engineering of the plant and who levied more serious complaints against Gaylor Engineering than North Central; North Central's liens on the ethanol plant and the legal issues the liens presented; and Debtor's proposed Chapter 11 plan from June 2004.[13] Trustee Lovald further testified he relied on the advice given by his special counsel, the Woods Fuller firm, on matters related to North Central's claim, including in particular Woods Fuller's review of North Central's claim support book, its analysis of the change orders, and later in the case, its analysis of North Central's § 506(b) claim. There was no dispute that Woods Fuller was fully versed in the facts and applicable law regarding North Central's claim. There was also no dispute that the firm's lead attorney for these matters is an experienced litigator who holds specialized knowledge about ethanol plant construction and operation. Thus, Trustee Lovald's reliance on Woods Fuller was well placed.

In his analysis of North Central's claim, Trustee Lovald estimated if its remaining claim were litigated, North Central would assuredly be awarded another $1,169,789.00 in principal, $497,250.00 in interest, and $23,000.00 in excise tax. He estimated litigation costs would be $145,000.00. Thus, he concluded that if the estate were to go to trial against North Central on its claim, the bankruptcy estate would pay out at least $1,835,039.00.[14] Trustee Lovald acknowledged this sum was less than his proposed $2,000,000.00 settlement, but he stated the difference was to recognize a substantial risk that North Central would, through litigation, recover additional portions of its large claim and also be awarded substantial interest on and possible costs relating to the remainder of the claim.

In response to Trustee Lovald's figures and assessment of North Central's amended claim and the issues surrounding that claim, James Jandrain, a member of and manager for Tri–State Financial, opined North Central was still owed somewhere

---

**13.** At the end of the hearing, Trustee Lovald also placed in evidence an August 31, 2004, letter to one of his attorneys in which Tri–State Financial offered to purchase the ethanol plant for $25,250,000.00. In the letter, Tri–State Financial allocated $1,500,000.00 for the resolution of North Central's claim, it agreed to provide a letter of credit for an additional $2,000,000.00 should North Central's claim exceed the allocation, and it said it wanted Trustee Lovald to commit to object to North Central's mechanic's lien claim.

**14.** During the first day of the evidentiary hearing, Trustee Lovald testified the excise tax in his calculations regarding North Central's claim had three elements: approximately $250,000.00 applicable to the original contract; $23,000.00 arising from the unpaid portion of North Central's claim; and $64,000.00 North Central had to pay on the "owner-provided" equipment. He stated Debtor's records were not clear on whether it had already paid North Central the $250,000.00 tax on the original contract or had instead paid North Central the $290,000.00 for its early completion bonus. However, he said it was clear either the $250,000.00 or the $290,000.00 was still due.

between $748,391.00, under his analysis of North Central's claim, and $1,509,000.00, using Trustee Lovald's analysis of North Central's claim during his pre-hearing deposition. Jandrain did not quarrel with Trustee Lovald's estimate that litigating North Central's claim would cost the bankruptcy estate approximately $145,000.00. Thus, the record offered by Tri–State Financial in opposition to the proposed settlement showed North Central's "hard-number" claim plus the bankruptcy estate's out of pocket costs for litigation would range between $1,654,000.00 [15] and $893,391.00. Even if Jandrain's lowest figure of $893,391.00 were accepted as offered, that alone does not demonstrate the proposed $2,000,000.00 settlement of North Central's entire claim is unreasonable. To the contrary, Jandrain's calculations and charts only demonstrated North Central's "hard-number" claim is very difficult to calculate. Jandrain's calculations further demonstrated the total claim the bankruptcy estate could owe North Central after litigation is a potentially large unknown best resolved by a reasonable compromise.

Jandrain's calculations regarding North Central's "hard-number" claim also had some shortcomings. He acknowledged he had not read the contract or the August 2002 time and materials agreement and he was thus not familiar with all their various provisions. He did not dispute his computations failed to include some $300,000.00 plus interest for taxes, insurance, and bond premiums, which Trustee Lovald testified were still owed North Central under the applicable documents, and he acknowledged this sum needed to be added to his calculations regarding North Central's contract claim. Jandrain also did not dispute that he had calculated the interest on Interstates Electric's subcontractor's claim differently than had Trustee Lovald.

In addition to testifying regarding his calculation of North Central's "hard-number" claim, Trustee Lovald testified at length in response to the particular legal and factual issues raised by Tri–State Financial regarding North Central's amended claim. He stated he had concluded it would not be worthwhile to forego a settlement in order to try the issues arising from Kim Buchanan's alleged breach of a fiduciary obligation to Debtor, the unsigned change orders, or North Central's alleged wilful exaggeration of its claim, and he explained his assessment of each of these key issues.

In response to Trustee Lovald's assessment of these key issues surrounding North Central's claim, Tri–State Financial offered little evidence. Instead, as the record reflects many, many times, Tri–State Financial reiterated its dissatisfaction with Woods Fuller's settlement recommendation to Trustee Lovald, and its view that Woods Fuller's settlement recommendation was a breach of the law firm's fiduciary or professional obligations to Debtor, who had employed the law firm before the bankruptcy and during its Chapter 11 pendency.[16] Tri–State Financial also again focused on North Central's claim rather than the proposed settlement, and it urged the Court to forego the settlement in lieu of a trial where all issues could be fully litigated. As Jandrain testi-

---

**15.** This is the figure calculated by Jandrain based on Trustee Lovald's deposition testimony. At the December 18–20, 2006, hearing, Trustee Lovald's calculation was $1,835,039.00 (North Central's "hard-number" claim of $1,690,039.00 plus litigation expenses of $145,000.00).

**16.** The validity of this legal position taken by Tri–State Financial will be addressed through Tri–State Financial's objection to Woods Fuller's pending fee application and its motion to have the firm disqualified as counsel for Trustee Lovald.

fied on December 20, 2006, he would prefer a "just" result over a more prompt final payout of claims.[17] He opined "fairness and justice" are "more important than [the] time value of money." While his conviction may be laudable, his calculations and sentiments did not demonstrate how Trustee Lovald's assessment of North Central's amended claim and the attendant legal and factual issues were faulty or show why the settlement did not fall within a range of reasonable compromises.

*Trustee Lovald relied on information provided by Randy Kramer, and that information is inadmissible as hearsay.* As noted above, Trustee Lovald acknowledged he relied in part on Randy Kramer's late 2002 assessment of North Central's claim under the first lien. Trustee Lovald understood Kramer was the owners' representative during the plant project, had served on Debtor's managing board, and was a former manager for Debtor's ethanol plant. Tri–State Financial took issue with the trustee's reliance on Kramer's assessment because of perceived evidentiary problems regarding a report written by Kramer and because Kramer was not an attorney and was not experienced in the ethanol business when he made that report.

Randy Kramer's assessment of North Central's first claim was just one aspect of Trustee Lovald's analysis of North Central's claim. As to admitted documents, the record indicates Kramer's short narrative following the plant explosion was admitted as a document that Trustee Lovald read as preparatory work for the settlement. It was admitted on that basis only, not for the truth of the matters asserted therein. Randy Kramer's February 25, 2003, letter to Tom Clark was also admitted, but Trustee Lovald acknowledged he did not rely on the latter in negotiating the

settlement but reviewed it subsequently. One August 2002 e-mail from Randy Kramer to Trustee Lovald's special counsel was not admitted as privileged. The Court was unable to find any other documents in the record authored by Randy Kramer, though some may be buried in the many volumes received. However, the Court's findings and conclusions herein are not premised on the truth of any written or oral statements by Randy Kramer. Thus, no hearsay issues are implicated.

*North Central materially breached its agreements with Debtor, including express and implied obligations under those agreements.* Again, Trustee Lovald acknowledged these issues obviously would be raised if North Central's claim were litigated. He concluded, however, as discussed above, the benefits to the estate in settling the claim outweighed the risks of litigation.

*North Central is not entitled to the sum sought in its amended claim because its principal breached his fiduciary duty to Debtor.* Trustee Lovald acknowledged he would raise this issue if he were going to litigate North Central's claim. He did not know if the estate would prevail, however, because the argument faced legal hurdles, such as establishing a breach of fiduciary duty by Kim Buchanan and imputing that breach to North Central. Thus, that issue alone did not outweigh the benefits of the settlement he proposed. In contrast, Tri–State Financial did not demonstrate how the estate would legally prevail on this issue or quantify the monetary benefit if the estate were to prevail.

An appropriate order approving the settlement with North Central will be entered.

---

17. Jandrain was in favor of a partial payout through a proposed interim distribution.

## IV.

■ In its objection to Trustee Lovald's proposed settlement with North Central and again during closings at the evidentiary hearing, Tri–State Financial argued the trustee's settlement, even if approved, is not binding on Tri–State Financial and Tri–State Financial may go forward with its objection to North Central's claim and its subordination adversary proceeding against North Central. Tri–State Financial has not cited any specific case law or statutory authority for this proposition, referring only generally to "the code" and "rules."

It is true 11 U.S.C. § 502(a) provides a party in interest may object to a claim, and Fed.R.Bankr.P. 3007 implements that Code section with no further limitations. However, only the Chapter 7 trustee has a *duty* to review claims and object when appropriate. 11 U.S.C. § 704(5)(2003). While several courts have found objections to claims within a Chapter 7 trustee's exclusive province and other parties in interest are permitted to object to a claim only if the trustee does not act, *see, e.g., Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1147 (1st Cir.1992), and *Trauner v. Huffman (In re Trusted Net Media Holdings, L.L.C.),* 334 B.R. 470, 475–76 (Bankr. N.D.Ga.2005)(cites therein); *see also* Fed. R. Bankr.P. 3007, ADVISORY COMMITTEE NOTE, this Circuit has not applied § 502(a) so narrowly.[18] *Rosenbaum v. Dutton,* 203 F. 838, 841 (8th Cir.1913)(equity holders are parties in interest who may object to the allowance of a claim if they have an interest in the res to be administered).[19] That said, however, by necessity, more than one objection to a claim cannot produce more than one allowed claim amount.

■ Most important, however, a court-approved settlement of a claim *is* binding on all parties to the case. Fed.R.Bankr.P. 9019(a); *Trism, Inc.,* 282 B.R. at 667–69 and 668 n. 3. This is a fundamental and necessary component of the bankruptcy process, and even more so regarding the settlement of claims *held* by the estate, since only the trustee may assert those claims. 11 U.S.C. § 323; *In re Robinson,* 368 B.R. 805, 809–10, 2007 WL 1121857 *4–5 (Bankr.E.D.Ark.2007).

Without some such system of representation [of the estate by the trustee], the

---

**18.** Many courts have concluded a Chapter 7 *debtor* generally does not have standing as a party in interest to object to a claim. *See, e. g., White v. Coors Distributing Co. (In re White),* 260 B.R. 870, 875 (8th Cir. BAP 2001)(citing *Kieffer v. Riske (In re Kieffer–Mickes, Inc.),* 226 B.R. 204, 208 (8th Cir. BAP 1998)(citing *Kapp v. Naturelle, Inc. (In re Kapp),* 611 F.2d 703, 706–07 (8th Cir.1979) (Act case))); *In re I & F Corp.,* 219 B.R. 483, 484 (Bankr.S.D.Ohio 1998)(cases cited therein). That is a different question than whether a party in interest other than the Chapter 7 trustee should pursue an objection to a claim. Based on Trustee Lovald's latest assessment, it is unlikely Debtor's equity holders will be paid in this case.

**19.** The Court of Appeals for the Eighth Circuit has held:

[A]n appeal from an order of the District Court allowing a claim presented by a creditor against the estate of the bankrupt, and which was objected to and contested by another creditor, can only be taken by the trustee in bankruptcy as the representative of all the creditors, but it was further held in that case, if the trustee in such a case refuses to appeal from the allowance of the claim on the request of the objecting creditor, the latter may move the District Court to direct the trustee to take an appeal as requested, or to permit the creditor to prosecute an appeal in the name of the trustee. *Rosenbaum,* 203 F. at 841 (citing *Chatfield v. O'Dwyer,* 101 F. 797, 798–99 (8th Cir.1906)). The same court, in In re Stern, 144 F. 956, 958–59 (citing *Chatfield,* 101 F. 797), reached the same conclusion regarding an initial objection to the claim, i.e., a creditor should object to a claim only if the trustee refuses to oppose it. The narrower premise, however, has not yet been widely followed in the Circuit.

whole law would fall under its own weight. If it took a unanimous vote of all the creditors before any claim could be compromised, any property sold, any exemption set apart, or any claim allowed, the result would be interminable litigation and an indefinite postponement of dividends.

*Amick v. Mortgage Security Corp. of America*, 30 F.2d 359, 361 (8th Cir.1929). Such a principle ensures bankruptcy law is not "prostituted by a captious and factious creditor." *Amick*, 30 F.2d at 364. Accordingly, Trustee Lovald's settlement with North Central is deemed binding on all parties in interest as to the allowed amount of North Central's claim and as to any claims the estate may have against North Central. As the Court discussed on the record with counsel earlier, whether North Central's allowed claim may still be subordinated, however, will be addressed within Adversary No. 05–1009.